HOMER J. THAYER & others *vs.* WESTERN UNION TELEGRAPH COMPANY.

Worcester. September 22, 1936. — February 23, 1937.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Damages*, For breach of contract. *Telegraph Company*.

Substantial damages properly were assessed for a mistake by a telegraph company in transmitting a message from a dealer in dairy products to his agent fixing the price the agent should pay producers, which resulted in the payment of a higher price than that stated in the message as filed, there being evidence warranting a finding that, although there was no express agreement between the dealer and the producers as to how the price should be computed; it was understood between them that the dealer, acting reasonably, would fix the price and the producers would accept what the agent paid them, and that, on the occasion in question, the producers would have accepted the lower price stated in the message as filed.

It appearing that, according to an understanding between a dealer in dairy products and producers, payments by the dealer to the producers were made periodically, were final for the products covered thereby, and were not payments on a running account, it could not properly be ruled as a matter of law that the dealer was barred from "recovering" from a telegraph company because, after he had sustained a loss by reason of a mistake in the transmission by the telegraph company of a message which resulted in a payment of too large a price to producers at a periodic settlement, he did not minimize his damages by deducting the overpayment from payments made at subsequent periodic settlements.·

CONTRACT OR TORT. Writ in the Superior Court dated July 17, 1928.

The action was heard without a jury by *Broadhurst, J.*

There was a finding for the plaintiffs in the sum of $500. The defendant alleged exceptions.

*R. Hall*, for the defendant.

*H. W. Cowee*, (*W. L. Macintosh* with him,) for the plaintiffs.

FIELD, J.   This is an action of contract or tort to recover damages alleged to have been sustained by the plaintiffs as the result of an error by the defendant in the transmission of a telegram. The case was heard by a judge sitting without a jury who made specific findings of fact and found for the plaintiffs in the sum of $500. The case comes before us on the defendant's exceptions.

The judge's findings of fact and rulings were as follows: "On June 14, 1927, the plaintiffs, who were copartners dealing in dairy products in Worcester, filed at the office of the defendant in Worcester, for transmission and delivery by telegraph to one Derby, the agent in charge of their creamery and factory at Enosburg Falls, in the State of Vermont, a message which read as follows: 'Worcester Thursday all heavy forty condensed sixty new fifteen buttermilk pay fifty on sweet.' The last four words of the message as filed are all that are material to the controversy. As delivered by the defendant to Derby at Enosburg Falls on the same day the last four words of the message were 'pay fifty one sweet.' The last four words of the message as filed in Worcester, if they had been delivered to Derby without change, would have been rightly understood by him to mean that he was authorized to pay on June 20 to the three hundred and thirty-one farmers for the sweet cream delivered by them to the plaintiffs during the last half of the preceding month at the rate of fifty cents a pound for the butterfat content of the cream. The message as delivered by the defendant to Derby was rightly understood by him to mean that the plaintiffs authorized him to pay the farmers at the rate of fifty-one cents a pound for the cream thus delivered. The difference of one cent a pound between the prices, apparently authorized by the two messages, amounted to . . . $674.99. Derby paid at the rate stated in the message delivered. The farmers had no express agreement with the plaintiffs at the

time of delivery of cream as to what they should be paid for it, but it was understood that the plaintiffs should fix the price twice a month and that the farmers would accept from them through Derby whatever price Derby paid them. The plaintiffs did not learn until they received the usual semi-monthly report from Derby a few days after June 20 that he had paid the farmers one cent a pound more than they intended he should, and it was some days after that when they learned from Derby that he had paid fifty-one cents instead of fifty cents a pound because the message received by him from the defendant told him to pay at the higher rate. By the time the plaintiffs learned of the defendant's mistake some of the farmers had already paid cotenants or lessors of their farms part of the money received by them from Derby. The farmers had a right to keep the money paid them by the plaintiffs on June 20, and the plaintiffs had no right to recover from the farmers in any way, sums equal to one cent a pound for the cream they were paid for on June 20. There was no reasonable way by which the plaintiffs could have reduced the loss they suffered through the defendant's mistake in the terms of the message, which was at all times after it was received from the plaintiffs, exclusively within their [its ?] control. The error in the message delivered was due to carelessness of some responsible employe or agent of the defendant. The message was of course an interstate message and was therefore subject to Federal laws and regulations applicable thereto. Under those laws and regulations the terms and conditions under which the message was received and handled by the defendant were valid, and binding on the plaintiffs. The defendant admitted that the evidence warranted a finding, and I find, that the provision exempting the company from liability unless claim for damages is presented in writing within sixty days after the message is filed, was complied with, — that is, that claim was presented as required. The plaintiffs admit that the provision of the undertaking by the defendant that its liability for mistake in the transmission and delivery of a message accepted at the rate paid by the plaintiffs is limited to

. . . [$500], is valid and binding on them.   I find for the plaintiffs and assess damages in the sum of . . . $500."

The judge denied the defendant's motion that "on the pleadings and all the evidence, finding and judgment be entered for the defendant," and its request for a ruling that "In no event can the plaintiff in this action recover more than nominal damages, and if the court finds for the plaintiff, its finding for the plaintiff must be for the sum paid for the transmission of the message together with interest thereon and no more."

The defendant excepted to the denial of this motion and of this request for a ruling "and to the findings and rulings made, insofar as such findings and rulings are inconsistent with the defendant's request."   The bill of exceptions sets out "all the evidence introduced which has any bearing on the question in issue."

The defendant's argument is addressed to the refusal of the judge to make the requested ruling above set forth. Whether this ruling was refused rightly depends upon the evidence.   Apart from matters hereinafter considered, there is no contention that the evidence did not warrant the specific findings of fact made by the judge.

There is no controversy with respect to the defendant's duty to the plaintiffs.   Nor is it contended that a finding was not warranted that there was a breach of the contractual duty of the defendant to the plaintiffs to transmit the message in the form in which it was delivered by the plaintiffs to the defendant.   For such a breach the plaintiffs clearly were entitled to recover at least nominal damages.   And the plaintiffs were entitled to recover substantial damages, subject to the agreed limitation of $500, for loss sustained by them proximately caused by such breach of the defendant's duty, at least so far as such loss might reasonably have been within the contemplation of the parties as a probable result of the breach.   *Holtz* v. *Western Union Telegraph Co.* 294 Mass. 543, 549.   See also *Wheelock* v. *Postal Telegraph Cable Co.* 197 Mass. 119, 126; *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210

Mass. 8, 21. It could have been found that the nature of the message delivered by the plaintiffs to the defendant for transmission was such as to give notice to the defendant that loss would be a probable result of error in transmission, and that such loss, at least to the extent of the excess of payments authorized by the message as transmitted over payments authorized by such message as delivered by the plaintiffs to the defendant, might reasonably have been within the contemplation of the parties as a probable result of the defendant's breach of contract.

The contentions of the defendant are: "1. That the plaintiffs have failed to establish any loss. 2. That the plaintiffs did nothing to minimize or reduce the damages which they allege they have sustained; and by reason of such failure are barred from recovery."

1. It cannot be ruled as matter of law that "the plaintiffs have failed to establish any loss."

The payments which the plaintiffs by the telegram authorized their agent to make to the farmers were for cream previously delivered. The defendant contends, however, that the plaintiffs have failed to prove that they have sustained any loss by reason of the error in the transmission of the message because they "have failed to establish that they paid any more than the price established by the differential [that is, 'five cents per pound of butterfat more than the market price for butter at Boston'] or that they paid any more than the farmers would have taken, or that they paid any more than the milk was worth."

There was no evidence that the plaintiffs "paid any more than the price established by the differential" or "that they paid any more than the milk was worth." It could have been found, however, that the plaintiffs by reason of the error in the transmission of the message paid "more than the farmers would have taken" by the amount of $674.99.

There is no controversy with respect to the price actually paid to the farmers. The evidence bearing particularly on the issue of the understanding between the plaintiffs and the farmers with respect to the price to be paid, and

the issue of the price which the farmers would have accepted was as follows: The plaintiff William J. Thayer testified that there "was no express price agreement between the plaintiffs and the farmers who sold them milk. The plaintiffs paid these farmers twice a month for their milk and cream and the farmers had to take what the plaintiffs paid them. The plaintiff [William J. Thayer] testified in answer to interrogatories propounded by the defendant that there was an understanding between the plaintiffs and the farmers that they would be paid five cents per pound of butterfat more than the market price for butter at Boston, but that they did not always pay the farmers in accordance with this understanding. In response to questions asked of the plaintiff William J. Thayer at the trial, he testified that the plaintiffs had an understanding with the farmers that if they produced cream which could be shipped as sweet cream, the plaintiffs would pay the farmers approximately five cents a pound over the price for butter as quoted by the Boston Chamber of Commerce. He further testified that there was no specific, definite understanding with the farmers but a general understanding that if market conditions warranted, the plaintiffs would try to pay five cents over the Boston Chamber of Commerce quotations for butter. At times the plaintiffs paid the farmers more than five cents over the price of butter at Boston and at other times less than five cents over the price of butter at Boston."

The finding of the judge that the "farmers had no express agreement with the plaintiffs at the time of delivery of cream as to what they should be paid for it, but it was understood that the plaintiffs should fix the price twice a month and that the farmers would accept from them through Derby whatever price Derby paid them," subject to the implied limitation that the plaintiffs act reasonably and in good faith, was warranted by the evidence.

This finding shows that the plaintiffs were not bound to pay the farmers the market value of the cream or an amount determined absolutely by relation to the market price of butter in Boston. Furthermore, even if, as we need not

decide, the understanding between the plaintiffs and the farmers with respect to the price to be paid for cream, according to this finding, was too indefinite to constitute a binding contract, the trial judge, using his knowledge of practical affairs (see *Holtz* v. *Western Union Telegraph Co.* 294 Mass. 543, 549), could draw the conclusion from this finding, in connection with other findings, particularly those showing the relatively small difference between the price per pound of butterfat content of cream fixed by the plaintiffs and that actually accepted by the farmers, that they would have accepted in payment for the cream previously delivered by them to the plaintiffs the price fixed by the plaintiffs in the message delivered by them to the defendant for transmission. And he could find that the plaintiffs sustained an actual loss in money by reason of the defendant's error in transmitting the message to the extent of the excess of the amount of the payments actually made to the farmers, in accordance with the message transmitted, over the amount fixed by the message delivered by the plaintiffs to the defendant and intended by the plaintiffs to be paid to the farmers which, as could have been found, the farmers would have accepted. These findings could have been made regardless of the market value of the cream. By reason of the error in the message transmitted the plaintiffs actually parted with money to the extent of the overpayment — not with goods — and the amount of money so parted with is the measure of their loss. *Hind* v. *Western Union Telegraph Co.* 278 Fed. 730, relied on by the defendant, is distinguishable on this ground. Consequently the absence of evidence of market value of the cream is not fatal to the plaintiffs' case.

The defendant, however, contends further that the plaintiffs have failed to establish any loss from the overpayment, for the reason that after discovering that such overpayment had been made they could have deducted from a later payment to each farmer the amount which he had been overpaid. This contention — considered later — is in substance that the plaintiffs cannot recover in this

action, for the reason that it does not appear that they did anything to "minimize or reduce" the damages.

2. It cannot be ruled as matter of law that the plaintiffs "are barred from recovery" for the reason that they "did nothing to minimize or reduce the damages which they allege they have sustained."

Clearly it could have been found that the plaintiffs did not contribute to the loss immediately sustained by them when the overpayment was made. They were bound, however, to "be reasonably active and diligent to recoup" such loss. *Hall* v. *Paine*, 224 Mass. 62, 65. See also *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 6; *Holtz* v. *Western Union Telegraph Co.* 294 Mass. 543, 549–550. But a person in the position of the plaintiffs need not "incur unreasonable inconvenience or expense, disorganize his business, or put himself in a humiliating position or in one involving loss of honor and respect." Am. Law Inst. Restatement: Contracts, § 336, Comment on Subsection (1) *a.* There was no evidence that the plaintiffs did anything to recoup the loss, and there was evidence to the contrary.

The evidence bearing particularly on the question whether there was any reasonable way in which the plaintiffs could recoup the loss resulting from the mistake in the transmission of the telegram and thus "minimize or reduce the damages" was as follows: The plaintiff William J. Thayer testified that "By the time the plaintiffs learned of the defendant's mistake, some of the farmers had already paid cotenants or lessors of their farms part of the money received by them from the plaintiffs. Most of the three hundred thirty-one farmers delivered milk and cream to the plaintiffs at Enosburg Falls after the error in transmission of the telegram had been discovered and prior to the date when payment for such milk and cream subsequently delivered was due them. The plaintiff [William J. Thayer] testified that it had been the policy of his company for over twenty years that payments made from time to time to the farmers were final and conclusive, that once a farmer had taken his check no adjustments were made, and that he did nothing to re-

coup from the farmers any of the excess payment, which had been made as a result of the error made in the transmission of the telegram."

Irrespective of the matter of the burden of proof (see *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 6) the evidence warranted the specific finding of the judge that there "was no reasonable way by which the plaintiffs could have reduced the loss they suffered through the defendant's mistake." The defendant properly does not contend that bringing suits against the three hundred thirty-one farmers who were overpaid would have been a reasonable way of reducing the loss, even if the plaintiffs had causes of action against these farmers for the amounts of such overpayments. The defendant contends only that, since most if not all of the farmers continued to deliver milk and cream to the plaintiffs after the mistake in the transmission of the telegram had been discovered, the plaintiffs should have deducted the amount of the overpayment to each farmer from the amount to be paid him on a later settlement. A finding was warranted, however, that the transactions between the plaintiffs and the farmers were carried on with the understanding that each semimonthly payment was made and accepted in final settlement for the milk and cream covered thereby and was not a payment on a running account. Even if the plaintiffs, according to the understanding with the farmers, could exercise some judgment and discretion in fixing the price to be paid for milk and cream at each semi-monthly settlement, it might well be thought inconsistent with fair dealing and sound business practice for the plaintiffs to continue to receive milk and cream from the farmers after a semimonthly settlement and pay therefor a price not based on the purchase of such milk and cream as an independent transaction but, instead, a price reduced by reason of a comparatively small overpayment on a previous semimonthly settlement which the farmers properly could have assumed was a final settlement. It cannot be ruled as matter of law that the plaintiffs were required to adopt this

method of reducing the loss. See *Holtz* v. *Western Union Telegraph Co.* 294 Mass. 543, 549–550.

All of the contentions made by the defendant have been discussed. They disclose no error. See *Walker* v. *Nickerson*, 291 Mass. 522, 527. The case is described as an action of contract or tort. We have considered it on the basis of an action of contract. In view of the conclusion reached it is not necessary to consider it also on the basis of an action of tort for negligence. See *Pollock* v. *New England Telephone & Telegraph Co.* 289 Mass. 255, 260.

*Exceptions overruled.*