Fecteau, Francis R., J.
This is an action brought by the plaintiff against its former employee for his breach of an employment contract between them, by which the plaintiff seeks to obtain damages for losses sustained for the defendant’s having failed to provide a 30-day notice of termination, verified time records and for having left a project on which he was working on behalf of a client and which cost the plaintiff the loss of income from that project upon which it billed for the defendant’s services. This matter came on for trial on June 17, 2005, before me, sitting without juiy, the parties having waived their rights thereto.[1] The defendant was granted, at his request, leave until June 29, 2005, to respond in writing to a claim of the plaintiff for attorneys fees, as a part of the breach of contract claim, following which the matter was taken under advisement.
From the summary judgment record, the court sets out for purpose of factual context, the following background information.
In 1997 Sigma, though its president, Mohan Nannapaneni (Mr. Nannapaneni), who testified during the trial, contracted with Rasamsetti for him to provide computer consulting services to Sigma’s clients. At the time the parties entered into the original contract, Rasamsetti was a resident of India and, as a result of Rasamsetti’s employment with Sigma, he was able to gain entrance to the United States by obtaining a temporary work visa. On September 30, 1998 the parties entered into another contract entitled Employment Agreement (Agreement). Pursuant to the agreement, Rasamsetti was to be paid only upon assignment by Sigma to one of its clients and upon submission by him of time record forms to Sigma. The agreement also provided that employment could be terminated by either party upon 30 days notice.
In March 2001, Rasamsetti, who was apparently a computer programmer, was assigned by Sigma, though its primary client Starpoint, to begin a new assignment at Wellington Management, a financial investment company. While the initial contract between Wellington and Sigma/Starpoint was for a period until June 1, 2001, it was extended and was reasonably expected to provide work to Sigma and its employee/consultant through the end of November 2001. On or about June 26, 2001, Mr. Rasamsetti gave notice to Sigma that he would be terminating his employment at the end of June, and refused to provide a 30-day notice of termination, even after repeated requests to him to do so. Upon receipt of this notice, and as a result of his refusal to work out the 30-day notice period, Sigma terminated the employment agreement with Rasamsetti for cause.
As a result of the defendant’s breach of this employment contract, the plaintiff claims it suffered the loss of the billable time for the services that it would have provided to Wellington through the consulting work of the defendant during the remaining 21 days of the 30-day notice period, as well as the additional 85 workdays that the defendant would have been expected to remain on the Wellington project through the end of November 2001. In addition, the plaintiffs claim includes payment to the defendant for 66 hours for services he claimed to have provided to Wellington prior to his termination, but for which he did not provide verified time slips, a prerequisite in order for Sigma to be paid by its customer, Wellington/Starpoint, and a contractual requirement imposed upon the defendant.
The court is satisfied from the credible evidence submitted that the plaintiff has proven its entitlement to damages from the defendant for: (1) his failure to provide verified time records for 66 hours of time he was paid by the plaintiff but for which the plaintiff cannot recover from its customer, at $29.39 per hour,[2] for a total of $1,939.74, and (2) the 21 additional workdays that Sigma lost on account of the defendant’s failure to work through the 30-day notice period required by the contract, as it appears reasonably unlikely that the plaintiff would have been able to replace the defendant at Wellington on such short notice. The value of this latter claim totals $4,937.52.
The third area of damage sought by the plaintiff is the reasonably expected net profit lost from the amount that the plaintiff expected to bill Wellington for the defendant’s services during the balance of the project, estimated as approximately 85 days, through November 30, 2001, i.e., $19,985.20. The court is mindful of the contractual obligations of the defendant/employee which include “any and all damages, costs, expenses, lost profits and benefits caused by the failure of the employee to fulfill employee’s obligations hereunder, whether direct or indirect, actual or consequential, and including any remedy available to *735 Sigma at law, or equity . . .” (See Paragraph 12B(vi) of employment agreement, ex. 1.) While the court is satisfied that the reasonably expected net profit that the plaintiff would obtain from this project was reasonably foreseeable to the parties at the commencement of the project to which the defendant was assigned, and that the plaintiff has shown though credible evidence that the project would likely have generated the need for its services through the beginning of November, the court is not satisfied that the defendant has waived the plaintiffs duty to mitigate its damages, nor that the plaintiff has proven that it has reasonably mitigated its damages or reasonably attempted to do so. There was no evidence offered by the plaintiff that it had taken any steps towards mitigation of its damages, other than efforts undertaken to tiy to persuade the defendant to return to work, nor any evidence suggestive that the plaintiff was either unable to substitute another consultant to cover some or all the time that remained on the Wellington project on which the defendant was assigned, or that such efforts would have been futile. See Burnham v. Mark IVHomes, Inc., 387 Mass. 575, 586 (1982) (“. . . a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part”); Thayer v. Western Union Telegraph Co., 296 Mass. 494, 501 (1937) (“they [the plaintiffs] were bound, however, to ‘be reasonably active and diligent to recoup’ such loss”). Moreover, given that the contract in question allowed the defendant to terminate his employment by a 30-day notice without recourse, a scenario that did not occur here, it would, nonetheless, be reasonably foreseeable to the plaintiff that such a situation could occur that would require it to respond with replacements in the event of a properly given 30-day notice. Without any evidence suggestive that the defendant’s work on this project was irreplaceable, and/or that the plaintiffs efforts to cover his absence would have been futile, in whole or in "part; it has failed to satisfy its duty to mitigate damages caused by the defendant’s breach for which the court is compelled to deny damages.
Lastly, the plaintiffs contractual claim includes attorneys fees and costs of litigation. See Paragraph 12B(vi): “. . . Sigma shall also be entitled to reimbursement of all legal fees, costs and expenses in pursuing any claim against employee.” The plaintiffs attorney has submitted an affidavit of his billings to the plaintiff which totals $50,037.50, at $200.00 per hour for 253 hours.[3] The defendant complains of the excessiveness of these billings.
A contract which includes a provision for the payment of legal expenses presents one of the exceptions to the general (“American”) rule regarding a party’s responsibility for payment of another party’s reasonable attorneys fees, such liability being enforceable. Leventhal v. Krinsky, 325 Mass. 336, 341 (1950), Trustees of Tufts College v. Ramsdell, 28 Mass.App.Ct. 584, 585 (1990). However, ‘[t]he party seeking attorneys fees bears the burden of showing that the amount sought is reasonable." WHTR Real Estate, Ltd Partnership v. Venture Distributing Inc., 63 Mass.App.Ct. 229, 235 (2005). “[A] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorneys fee under State Law as well as Federal law.” Black v. Coastal Oil New England, Inc., 57 Mass.App.Ct. 696, 698, fn.5, 7 (2003), citing the factors discussed in the case of Linthicum v. Archambault, 379 Mass, 381, 388-89 (1979). See also Margolies v. Hopkins, 401 Mass. 88, 93 (1987), in which is referenced similar factors originating from the case of Cummings v. National Shawmut Bank, 284 Mass. 563, 568-69 (1933). Such factors generally relevant to this analysis are “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the results obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. Linthicum, Id., at n.5. Proportionality between the outcome, i.e., damages award, and legal fees are not required. See Black v. Coastal Oil New England, Inc., supra, at 697-98.
Here, while the court is knowledgeable about the contents of its own file, including the docket entries in the case at bar, and can evaluate a number of the factors from the history of the case, as well as the particular experience of this justice with the two summary judgment motions (one brought by the plaintiff, which the court largely allowed, and one by the defendant which was denied), the plaintiff has not provided evidence of all of the factors relevant to this issue, including the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.
The defendant is heard to complain that the amount claimed by the plaintiffs attorney, in prosecuting this fairly straight-forward action based upon an employment contract, is excessive in certain respects and notwithstanding a zealous defense. For example, the amount of time charged in connection with efforts to attach and seize the defendant’s automobile, an asset of modest value, to secure partial satisfaction of a judgment that became likely in this case following summaiy judgment, and apart from efforts to dissolve the attachment, totaled approximately 10 hours. The value of the car is likely less than the amount of legal services expended in order to attach and seize it. Furthermore, the defendant contends that the amount of time spent in “telephone conference” exceeding 25 hours is unreasonable. The defendant also contends that the plaintiff ought not to be reimbursed for the amount of time spent in connection with resisting defendant discovery requests in May, June and July *736 2002, exceeded 17 hours, and efforts made in opposing the defendant’s motion for sanctions in October, November and December 2002, of approximately 22 hours.
The defendant also makes additional complaint concerning the amount of time the plaintiffs attorney spent in preparing for and conducting the deposition of the defendant and his wife, amounting to approximately 30 hours, 19 hours of which was actual deposition time and 11 hours in preparation. In addition, the defendant objects to the 9 hours of time spent in researching the basis for the plaintiffs ultimately successful motion to dismiss the final count of the counterclaim and the defendant’s opposition to such a motion.
Examination of the invoices of plaintiffs counsel leads the court to the conclusion that the legal services rendered to the plaintiff were not always conservatively spent, and to find that some efforts were impractical and therefore unreasonable. I do find that the majority of the work for which the plaintiff was billed was necessary, especially given the zealousness and tenacity with which some of the contested hearings manifested. As I was the judge who presided over the hearings concerning the two motions for summary judgment, as well as the final trial on the issue of damages, I witnessed a level of inflexibility and contentiousness unusual for a contract action. Such rigor contributes to the cost of legal services and is a factor that the court can and does take into consideration
Another factor present here is the fact that through motion practice, all liability issues have been resolved without a trial, which would have added to the cost. Were that not the case, the defendant’s testimony would likely have been required, which would have consumed several hours of preparation and court time. Whether the time that the defendant complains of would have been equaled if liability was an open issue at trial is open to speculation, but it likely would not have been significantly less. Ultimately, while being mindful of the appropriate factors for consideration, and that the court’s analysis must still utilize somewhat rough tools to determine whether the time spent and the amount sought is reasonable, “shotgun” approaches such as proportionality to the damage award or a simple reduction of the fees requested by a percentage as the defendant suggests lends a certain logical appeal are not tools which are sufficiently focused or refined unless such an approach takes into appropriate account some or all of the factors which the court must consider, nor does such an approach fairly recognize the contribution of the defendant’s possible intransigence to a more economical resolution.
Given the above discussion, and some examples of rather exhaustive time spent in telephone conversation between plaintiffs trial counsel and its staff counsel (whom I understand to have been the human contact between the plaintiff and trial counsel), the time spent unpractically on a seizure of the defendant’s automobile and unreasonable resistance to discovery requests for which motions to compel were allowed, a reduction by 60 hours of the amount of time spent in legal services is deemed appropriate. Finally, notwithstanding that the plaintiff offered no evidence concerning the experience and reputation of its attorney nor the rates or charges he and others typically charge for such a case, the court is satisfied from its own experience with other awards of legal fees locally that the hourly rate charged by the plaintiffs attorney is within the usual and customary range, and that he generally demonstrated a level of experience and competence generally consistent with the rate charged. However, the result obtained is another factor which the court must consider. Given that the full amount of damages claimed by the plaintiff was $26,862.40, and the damages awarded herein are for the amount of $6,877.26, a further reduction of the plaintiffs legal fees is compelled. The court recognizes, however, that the bulk of services provided to the plaintiff were well prior to trial; it appears from the invoices that concentration upon trial preparation began in earnest at approximately June 15, 2005, with 20 hours of time spent from June 15, to and including the June 17, 2005 trial (such entries appearing to be the only entries dedicated to the trial of the damages aspect of the case). I therefore deem it appropriate, given 'the relative ease and simplicity that proof of the elements of damages for which an award is made could be and was established, to further reduce the plaintiffs award for legal fees by the 20 hours of time spent in preparation for and on trial, resulting in a further net assessment of damages to the plaintiff for attorneys fees in the amount of $34,600.00, together with costs of suit in the amount prayed for, namely, $2,466.22.

ORDER FOR JUDGMENT

For the foregoing reasons, a judgment shall enter for the plaintiff in the amount of $6,877.26 for breach of contract and for $34,600.00 for reasonable attorneys fees incurred as a result, together with costs of $2,466.22.

Liability in this matter had been established by prior orders of the court that granted summary judgment to the plaintiff and which ordered the dismissal of the only count that survived that judgment. See orders of the court, by the undersigned, on the plaintiffs motion for summary judgment (docket paper no. 28, which allowed summary judgment for the plaintiff on its contract action and dismissed two of the three counts of the defendant’s counterclaim) and by Locke, J., on the plaintiffs motion to dismiss (paper no. 30), which dismissed the third count of the counterclaim. Essentially what remained for trial was the issue of damages.

Nhis hourly net profit amount is determined by the hourly rate charged to Wellington of $64.00 per hour, less $34,615 per hour paid to the defendant.

The plaintiff does not explain how 253 hours result in a total of $50,037.50, as this should total $50,600.00.