HOWARD YOUNG *vs.* SOUTHGATE DEVELOPMENT CORPORATION
(and a companion case [1] ).

Bristol. November 5, 1979. — January 11, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Attorney at Law,* Compensation. *Judge. Public Policy.*

An attorney was not entitled to recover under a contingent fee agreement
which was not executed by his client. [524-525]

Although after he became a judge, an attorney did not scrupulously avoid
contact with a former client, his insubstantial involvements with the
client, while inappropriate, did not warrant a forfeiture of his right to
collect a fee based on the value of the services which he had rendered
prior to the time he assumed the bench. [525-526]

In an action by an attorney to collect a fee for services rendered to a
client, the judge did not abuse his discretion in computing the fee on
the hourly charge regularly used by the attorney, without taking into
consideration the successful outcome of the matter after the attorney
had withdrawn from the case. [526]

CONTRACT. Writ in the Third District Court of Bristol
dated March 28, 1975.

CIVIL ACTION commenced in the Superior Court on Sep-
tember 2, 1975.

The cases were consolidated for trial in the Superior
Court and were heard by *Smith,* J.

After review was sought in the Appeals Court the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Joseph I. Macy* for Howard Young.

*Donald J. Fleming* for the Southgate Development Cor-
poration.

---

[1] Southgate Development Corporation *vs.* Howard Young.

WILKINS, J. A judge of the Superior Court awarded the plaintiff Howard Young $2,500 as a fee for legal services rendered on behalf of the defendant Southgate Development Corporation (Southgate), basing his determination on a rate of $50 an hour for fifty hours of work. Each party has appealed. We transferred the appeals here on our own motion.[2]

The plaintiff argues that he is entitled to recover on a contingent fee agreement which Southgate never executed and that, in any event, the fair value of his services was greater than $2,500. Southgate argues that it should not be obliged to pay anything to the plaintiff because he engaged in unethical or improper conduct. We reject all these arguments and affirm the judgments.

In the summer of 1972, representatives of Southgate asked the plaintiff to represent it in connection with certain matters in the town of Dartmouth, including a proposed rezoning of a parcel of land and the obtaining of a gasoline storage permit. The plaintiff wrote Southgate on August 3, 1972, that his minimum fee would be $1,000, that if the rezoning were successful, he would charge a further fee of $10,000, and that, if the gasoline storage permit were obtained, he would charge an additional $10,000. He asked Southgate to sign a copy of the letter. That letter proposed a contingent fee agreement under S.J.C. Rule 3:14, 351 Mass. 795 (1967). Southgate never executed the agreement. Rule 3:14 provides that such an agreement is not effective unless signed by the client. Disciplinary Rule 2-106 (C) of Canon 2 of the Code of Professional Responsibility (359 Mass. 807 [1972]) provides that a "lawyer shall not enter into an arrangement for, charge, or collect a contingent fee,

---

[2] The plaintiff Howard Young brought suit for his fee in March, 1975, in the Third District Court of Bristol. For reasons that are not clear, in September, 1975, Southgate brought a proceeding in the Superior Court seeking a declaration that it was not indebted to the plaintiff. These actions were consolidated for trial in the Superior Court. The judge entered findings, rulings, and an order applicable to each case. He entered consistent judgments in each case.

except as permitted by" rule 3:14. Consequently, the plaintiff may not recover on that agreement. *Serlin* v. *Rotman,* 371 Mass. 449, 450 n.2 (1976). The fact that he made a good faith attempt to comply with rule 3:14 protects him against a charge of champerty (rule 3:14 [2]), but that good faith does nothing to support a claim based on the unexecuted contingent fee agreement.

Southgate's claim that it should be relieved of all liability to the plaintiff because of his alleged misconduct lacks merit. The plaintiff obviously performed services for Southgate that were of assistance in obtaining the results desired. By his efforts, an ad hoc committee reported to the planning board that the area should be rezoned. However, because of his nomination to be the presiding justice of the Bristol County Juvenile Court, the plaintiff performed no services for the defendant after December 1, 1972. The planning board's statutory hearing on the proposed zoning change, the special town meeting at which the change was voted, and the significant action concerning the gasoline storage permit occurred after December 1, 1972, and after the plaintiff had assumed judicial office. Although there were some conversations between the plaintiff and representatives of Southgate after the plaintiff had been sworn in as a judge concerning the subjects for which the plaintiff had been retained, these were initiated by Southgate. The plaintiff obtained other attorneys to complete the matters which were pending when he assumed judicial office.

Plainly, a judge should refrain from participating in matters for former clients after he has taken his oath of office. He should not use courthouse facilities for discussions of these matters. As a practical matter, in certain instances, successor counsel or the client may need particular information which only the judge may be able to furnish. However, a conscientious attorney about to assume the bench should be certain that all matters are in the hands of successor counsel or that the client is aware of the need for successor counsel. Such an attorney should anticipate future

needs for information and assistance and should meet them, as far as possible, before assuming judicial office.

The plaintiff here did not meet these standards. His conduct suggests that he was trying to preserve his contingent fee. He did not scrupulously avoid unnecessary contact with these matters after he assumed the bench. However, these involvements, although inappropriate, were insubstantial. Certainly, these indiscretions do not warrant a forfeiture of his right to collect a fee based on the value of the services which he rendered prior to the time he became a judge. See *Valley Stream Teachers Federal Credit Union* v. *Commissioner of Banks*, 376 Mass. 845, 853-855 (1978); *Harness Tracks Security, Inc.* v. *Bay State Raceway, Inc.*, 374 Mass. 362, 366-367 (1978); *Town Planning & Eng'r Assocs.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 746-747 (1976). Indeed, if the plaintiff had not become a judge, in all likelihood he would have carried the matters to successful completion and would have been entitled to charge a significantly larger fee than $2,500.

The judge was not plainly wrong in determining that the fair value of the plaintiff's services rendered prior to December 1, 1972, was $2,500. The plaintiff argues that the judge should have considered the benefit Southgate obtained from the successful results achieved. Obviously, the rezoning and gasoline storage permit increased the value of Southgate's property. However, at the time the plaintiff ceased his representation of Southgate, none of this favorable municipal action had occurred.

The hourly charge which the judge used in computing the plaintiff's fee was that regularly charged by the plaintiff. Because success had not been yet obtained and Southgate had to retain successor counsel, the use of the plaintiff's normal time charges in determining Southgate's liability was reasonable and appropriate.

*Judgments affirmed.*