JOHN F. MULHERN *vs.* MARTIN J. ROACH.

Middlesex.  March 6, 1986. — July 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law,* Compensation. *Eminent Domain,* Compensation of attorney.

At the jury-waived trial of an action by an attorney seeking to recover a fee for his services in representing a former client in eminent domain proceedings against a city's redevelopment authority, it was not error, in the circumstances, for the judge to exclude evidence concerning the fee charged by counsel for the authority and the amount of time his firm spent in opposing the defendant's eminent domain cases. [28-29]

In an action by an attorney against a former client whom he had represented in eminent domain proceedings seeking to recover a fée for those services which, in the absence of a written agreement, was to be reasonable and fair, with its details to be "worked out at a later date," an award by the judge, as trier of fact, of $350,000 was within the range of his reasonable discretion, in view of his warranted findings that the plaintiff was skilled and highly regarded as an eminent domain attorney, that the matter was complex, that a large amount of money was involved, and a result favorable to the client was obtained. [30-31] WILKINS, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on August 14, 1980.

The case was heard by *Jeremiah J. Sullivan,* J., sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Harry L. Manion, III (Cynthia L. Hanley* with him) for the plaintiff.

*Ferdinand C. Mauet* for the defendant.

LYNCH, J. The plaintiff, John F. Mulhern, seeks to recover attorney's fees and expenses allegedly owed him by the defendant, Martin J. Roach, as a consequence of the plaintiff's suc-

cessful representation of the defendant in two land damage actions against the Newton Redevelopment Authority (NRA). Those actions were tried twice in the Superior Court, first before a judge without a jury, and second before a jury. See G. L. c. 79, § 22, as appearing in St. 1973, c. 983, § 1. Damages assessed at the nonjury trial were $559,481. The jury trial resulted in damages for Roach in the amount of $1,186,101. The Appeals Court affirmed, *Roach* v. *Newton Redevelopment Auth.*, 8 Mass. App. Ct. 618 (1979), as did this court. *Roach* v. *Newton Redevelopment Auth.*, 381 Mass. 135 (1980). The plaintiff wrote both appellate briefs, but did not argue the appeals. In August, 1980, the plaintiff commenced this action in the Superior Court seeking the award of reasonable attorney's fees. A judgment was entered for the plaintiff in the amount of $350,000 plus interest.[1] Roach appealed, and the Appeals Court reversed, 20 Mass. App. Ct. 322 (1985), holding that the judge gave inadequate consideration to the fact that the fee was not to be set on a contingent basis and that the plaintiff had not established the time spent by him on the cases. The Appeals Court also held that the judge's exclusion of the NRA's counsel's testimony of their time charges in the eminent domain matters was reversible error. We granted the plaintiff's request for further appellate review, and we affirm the judgment of the Superior Court.

We summarize the judge's findings of fact. The plaintiff is an attorney who has been practicing law in Massachusetts since 1956.[2] He has served as a commissioner of real property for the city of Boston and as general attorney for the Boston Housing Authority (BHA). The plaintiff possesses high standing in the Bar as an eminent domain attorney and is an expert in tax abatement cases in which the fair market value of real property

---

[1] At the time the plaintiff's suit for his fee commenced, the net amount of the judgment plus postjudgment interest for Roach in the eminent domain cases was $1,678,000.

[2] The plaintiff was a trial attorney for the Boston & Maine Railroad for a brief period. He then became an assistant district attorney in Suffolk County and worked in this capacity for "eight or nine years." Later, he practiced with the firm of Mulhern & Mulhern in Boston.

is at issue. Although he had represented plaintiffs in only four eminent domain cases, he has "represented hundreds of defendants in similar cases . . . ."

The defendant owned land in Newton at the intersection of Route 128 and Washington Street which was zoned for residential use. He had acquired the land in three separate purchases in 1957, 1964, and 1965. In 1969, the NRA[3] took one part of the land for commercial use in conjunction with a State assisted funding plan. In 1970, the NRA took the remaining front portion of the defendant's land as part of a Federally funded program. The NRA awarded the defendant a pro tanto amount of $214,000.[4] From the time of the takings, until December, 1975, the defendant's strategy had been to try to settle the cases favorably himself, with little use of lawyers.[5] Petitions for assessment of damages were filed in the Superior Court in 1971 and 1972,[6] but very little else had been done to ready the cases for trial.

The plaintiff and the defendant had been friends for years and had many offhand discussions about the defendant's cases. On December 31, 1975, as the plaintiff was leaving a country club, the defendant informed him that his eminent domain cases were on for trial the following Monday, January 5, 1976, and asked the plaintiff to represent him at trial. The plaintiff agreed. The defendant stated that he had not yet retained an appraiser and the plaintiff replied that he would try to obtain

---

[3] The NRA was subsequently dissolved in 1978 and was succeeded by the Newton Community Development Center.

[4] General Laws c. 79, § 8A (1984 ed.), provides in pertinent part: "The board of officers who have made a taking under this chapter shall, prior to the expiration of sixty days subsequent to the recording of the order of taking, offer in writing to every person entitled to damages on account of such taking a *reasonable amount* which such board is willing to pay, either in settlement under section thirty-nine of all damages for such taking with interest thereon, together with taxable costs, if any, or as a payment pro tanto" (emphasis supplied).

[5] Prior to December, 1975, the defendant had retained a series of attorneys to represent him in aspects of this matter.

[6] The two cases were consolidated. See *Roach* v. *Newton Redevelopment Auth.*, 8 Mass. App. Ct. 618, 619 n.2 (1979).

a continuance. It was agreed that they would discuss the fee at a later date.

The plaintiff appeared in court on January 5, established that he had just been retained and had not yet secured appraisers, and made what he expected to be a routine motion for a continuance. He was confronted with the fact that the file had been marked "no further continuances" by a prior judge (first judge), and the attorneys for the NRA objected to the continuance. The plaintiff then discovered that when the cases had first been called for trial in November, 1975, the defendant had appeared pro se, having discharged the attorney representing him at that time.[7] The first judge had told the defendant to get an attorney and an appraiser, and had written him a letter to that effect. Only after the plaintiff agreed to file a stipulation on behalf of the defendant waiving a certain amount of interest and providing some compensation for the NRA's counsel, did the first judge reluctantly agree to grant the continuance. It was imperative that the plaintiff secure the continuance, as there was no appraiser to testify, virtually no trial preparation had been completed, and it was likely that if the cases were tried on January 5, judgment would only be for the pro tanto amount.

After receiving the necessary continuance, the plaintiff began to prepare for trial. He retained appraisers, worked with them and examined "in minute detail" the NRA's possible approach to the appraisal questions. Much of the trial preparation occurred at the defendant's son's home and entailed going through volumes of records and papers that the son kept in his cellar. Many of the documents with which the defendant provided the plaintiff were of little value. Although the plaintiff was assisted by the defendant, the defendant's son, and his granddaughter, the plaintiff was always in charge of and in control of the cases. The legal and factual analysis of the defendant's claims and of the NRA's defenses were the plaintiff's work product.

---

[7] The defendant had discharged the attorney then representing him just prior to trial because that attorney had presented him with a written contingent fee agreement; the defendant refused to sign it.

The bench trial lasted five days and, as the defendant was not satisfied with the award, a jury trial was claimed. This trial lasted seven days and the jury verdict doubled the judgment of the bench trial.

In April, before the appeal was to be argued before the Appeals Court, the defendant asked the plaintiff for a bill. The plaintiff sent the defendant a bill which was equivalent to one-third of the defendant's recovery. On April 14, the defendant sent the plaintiff a letter disputing the bill, and discharged him. The defendant then retained Mr. Robert Cohen to represent him in the appeals of the eminent domain cases. As Mr. Cohen was naturally unfamiliar with the cases, he relied on the plaintiff's brief for the Appeals Court appeal. Although discharged by the defendant, the plaintiff cooperated "in every way possible" with Mr. Cohen in preparing the cases for appeal. After the Appeals Court affirmed and the NRA requested further appellate review of this court, the plaintiff again prepared the brief "which took three or four days" and mailed it to Mr. Cohen from Florida. Mr. Cohen had not planned to write a new brief for this appeal and intended to simply rely on the Appeals Court brief, but, on the plaintiff's advice, did not.[8] Mr. Cohen relied on the plaintiff's second brief at argument before this court.

There was an understanding between the plaintiff and the defendant as friends that the plaintiff would charge a reasonable and fair fee for his services. The plaintiff's bill was "merely an expression of [the plaintiff's] view after two trials and after preparation of the appeals brief that a fair and reasonable fee would be in the amount that did not exceed the usual common fee of [one third] the net amount plus the interest that had accrued." At no time did the plaintiff keep a record of the time spent in preparation of trial or the appeals. He did, however, "spend a great deal of time analyzing the facts in the cases [and] all of the documents presented to him."

---

[8] The plaintiff maintained that further review would not have been granted unless the court wished to "deal again" with the issues decided by the Appeals Court so that a rebriefing of the cases for the second appeal was advised.

Finally, the judge found that, on the evidence, a reasonable fee for the plaintiff's services, on a quantum meruit basis, is $350,000, plus interest from the date of the suit.

The plaintiff maintains that the judge properly considered the appropriate factors in determining his fee and that his findings are supported in the evidence. The defendant argues that many of the judge's findings relating to the determination of a reasonable fee for the plaintiff's legal services were clearly erroneous. In particular, he alleges that the judge failed to consider the time actually expended by the plaintiff and erroneously failed to admit evidence of the NRA's counsel's time charges. He also challenges the judge's finding that the eminent domain cases were complex.

1. "Findings of fact [by a trial judge sitting without a jury] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). That the instant case concerns the propriety of a judge's award of an attorney's fee has no special bearing on the standard of review. The question of what is fair and reasonable compensation for legal services rendered is one of fact for a trial judge to decide. *First Nat'l Bank* v. *Brink,* 372 Mass. 257, 263-264 (1977), and cases cited. *Guenard* v. *Burke,* 387 Mass. 802, 808 (1982). See *Serlin* v. *Rotman,* 371 Mass. 449, 451 (1976) (where evidence supported the judge's conclusions as to fair and reasonable value of attorney's legal services, the fact "[t]hat this court might have reached a different conclusion, less favorable to [the attorney, was] not relevant argument"). Cf. *Meghreblian* v. *Meghreblian,* 13 Mass. App. Ct. 1021, 1023-1024 (1982). Accordingly, unless our review of the record leaves this court with a definite and firm conviction that a mistake has been committed, *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 160 (1977), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948), or unless the judge's ultimate findings and conclusions are clearly erroneous or inconsistent with the relevant legal standards, we must affirm. See *Roche* v. *Boston Safe Deposit & Trust Co.,* 391 Mass. 785, 792-793 (1984).

2. The judge found, and the plaintiff concedes, that no written contingent fee agreement was entered into by the plaintiff and the defendant. See S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981); S.J.C. Rule 3:07, DR 2-106, as appearing in 382 Mass. 772 (1981). See *Young* v. *Southgate Dev. Corp.*, 379 Mass. 523, 524-525 (1980); *Serlin* v. *Rotman, supra* at 450 n.2. The absence of a valid contingent fee agreement does not prevent an attorney from recovering the fair value of his or her services. See *Guenard* v. *Burke, supra* at 806-808; *Young* v. *Southgate Dev. Corp., supra* at 525-526. See also *First Nat' l Bank* v. *Brink,* 372 Mass. 257, 264 (1977). Moreover, in the instant case, the judge found that the parties, as friends, actually entered into an implied agreement that the plaintiff's charge would be reasonable and fair,[9] and that the details of his fee would be "worked out at a later date."

In determining what is a fair and reasonable charge to be made by an attorney for his or her services, "many considerations are pertinent, including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured." *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933). See S.J.C. Rule 3:07, DR 2-106 (B), as appearing in 382 Mass. 772 (1981). See also *First Nat' l Bank* v. *Brink, supra* at 265 (factors listed in rule are "substantially identical" to those contained in *Cummings, supra*). Not one of the factors is necessarily decisive. "The weight to be given to each of them will vary according to the nature of the services rendered in the particular instance under examination." *McLaughlin* v.

---

[9] The defendant challenges the judge's findings regarding the actual agreement between the parties as to the plaintiff's fee. Although the defendant testified that he and his son met with the plaintiff at the defendant's home on December 27, 1975, and that the plaintiff agreed to represent him in the eminent domain cases at the rate of $40.00 per hour, the judge found that this testimony was "not worthy of belief" and noted that the defendant's son was not called as a corroborating witness.

*Old Colony Trust Co.,* 313 Mass. 329, 335 (1943). See *Cummings, supra.*

3. We now review the judge's findings in light of the *Cummings* factors.

a. *Ability and reputation.* The judge was warranted in finding that the plaintiff "brought excellent and special skills" to these cases and that he was highly regarded by the Bar as an eminent domain attorney. The evidence included testimony by an attorney who was qualified as an expert in eminent domain cases, that he had tried many cases against the plaintiff, that the plaintiff was "an outstanding trial lawyer . . . perhaps the best trial lawyer" the Boston authority had.

b. *Demand for services.* Throughout the plaintiff's representation of the defendant, the plaintiff was a full-time employee of the BHA authorized to accept "outside cases."[10] The fact of his full-time employment clearly served to limit the amount of such outside work he could reasonably manage. Since neither the judge nor the parties put particular emphasis on this factor no further analysis on our part is required.

c. *Importance and difficulty of matter.* The judge considered "the importance of the matter," or, in the language of DR 2-106 (B)(1), the "novelty and difficulty of the questions involved." He found that the issues in the eminent domain cases were "very complex," and the takings were "highly unusual," requiring the exercise of great skill and ability on the plaintiff's part. This finding was not clearly erroneous. It is supported by supplementary findings concerning the method used to establish a reasonable probability of rezoning to a commercial use. See *Roach* v. *Newton Redevelopment Auth.,* 381 Mass. 135, 136-137, 138-139 (1980), for discussion of relevant legal principles confronting the plaintiff in his preparation of the defendant's cases. The judge also made detailed findings on the method used by the plaintiff to prove the availability of access necessary to show the land's adaptability for commercial use.

---

[10] The judge found that at the BHA the plaintiff earned a salary of $33,388 per annum in January, 1976, and of $35,888 in 1980.

On our review of the record, we cannot say that the judge's assessment of the difficulty of the cases was plainly wrong. The defendant challenges the judge's finding that the cases were complex on the ground that the judge did not give due consideration to the assistance he received from the defendant's son. There is conflicting evidence as to the degree and nature of the son's contribution. The judge clearly considered the son's efforts, but found that, although the plaintiff was assisted by the son, as well as the defendant and the defendant's granddaughter, the "plaintiff was always in charge and control of the case" and that the legal and factual analyses of the defendant's claims and of the NRA's defenses were the plaintiff's work product. He found that although the son had provided the plaintiff with a great many documents, some were of value to the defendant's case, "but much of it was not." On the evidence, the judge's findings were warranted.

d. *Time spent.* The judge found that the plaintiff "did spend a great deal of time" analyzing the facts, documents (which he found to be voluminous), and law, and in cooperating with his successor counsel. He also found that the plaintiff kept no written time records. The defendant argues that the judge's consideration of this factor was inadequate and claims that the amount of time expended by the attorney is "the lodestar for determining a fair and reasonable legal fee." While we agree that the time expended by the plaintiff is a weaker aspect of the plaintiff's case,[11] the judge did take into account the time spent by the plaintiff. He found that almost no preparation had been done on the defendant's eminent domain cases prior to the plaintiff's first appearance on the defendant's behalf. In the six years which intervened between the takings and the ultimate trial in 1975, no discovery had been undertaken. From the record, it is apparent that although the plaintiff was familiar with the defendant's cases, the judge's finding that the plaintiff had "nothing more than general information" from the defend-

[11] We also agree with the admonition of the Appeals Court in *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 577 n.5 (1980), *S.C.* 384 Mass. 803 (1981), commending attorneys to the "utility of time records" even when they do not expect time to be the basis for billing.

ant was supported. The judge heard extensive testimony, con-
sisting of a detailed review of what the plaintiff did, or failed
to do, by way of pretrial preparation, examination at both
Superior Court trials, and the extent of his involvement in the
appeals of the defendant's cases. Such testimony, including
that which was elicited during intensive cross-examinations of
the plaintiff, proved the lion's share of the oral evidence intro-
duced at the trial of the instant case. Many of the judge's
findings reflect a review of this testimony.[12] A judge's consid-
eration of the specifics of an attorney's actions in the course
of his or her representation of a client necessarily entails per-
ception of the probable time involved to perform those actions.

Contrary to the defendant's assertions, this court has never
deemed time spent by an attorney to be the "lodestar" in deter-
mining a fair and reasonable fee.[13] In *Cummings, supra* at 569,
we cautioned that "[n]either the time spent nor any other single
factor is necessarily decisive of what is to be considered as a
fair and reasonable charge for [an attorney's] services." In that
case, the attorney himself admitted that "he might have spent
altogether twelve or fifteen hours" on the matter. *Id.* at 567.
The court sustained the award of $5,300 for the attorney's
services, which essentially consisted of collecting a debt of

---

[12] For example, the judge found that the plaintiff prepared supporting
affidavits and argued all motions personally, and at both Superior Court
trials presented witnesses and cross-examined the NRA's witnesses, and
prepared both briefs for appeal. Just before the bench trial, the plaintiff
went over plans and documents. The judge found that the plaintiff im-
mediately went to work preparing the defendant's cases for trial, and that
establishing reasonable probability of rezoning using adverse witnesses
proved to be a "delicate operation."

[13] For this reason the defendant's reliance on many cases concerning
claims for attorney's fees under 42 U.S.C. § 1988 (1982) is misplaced.
Hourly rates in such cases have been said to be "the lodestar calculation."
*Wojtkowski* v. *Cade,* 725 F.2d 127, 131 (1st Cir. 1984). See *id.* at 130,
citing with approval cases requiring lawyers seeking a fee under § 1988 to
maintain "meticulous, contemporaneous time records," and announcing that
such records are a "prerequisite for attorney's fees" in a particular circuit.
See also *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d 945, 950 (1st Cir. 1984)
(the "lodestar" is determined by multiplying the total number of hours
reasonably spent by a reasonable hourly rate). Compare *Draper* v. *Town
Clerk of Greenfield,* 384 Mass. 444, 456-457 (1981) (not utilizing a lodestar
approach in a § 1988 attorney's fee claim).

approximately $102,000. In *First Nat'l Bank* v. *Brink, supra* at 267, this court approved a fee of $760,000 in a case involving a Federal income tax matter. The law firm had spent about 2,000 hours on the case, and the firm's total "billable time charges" were approximately $102,000. *Id.* at 261-262. The client argued that "[t]ime charges, when they are substantial, should be the starting point and the touchstone for determining a fair and reasonable legal fee." The court squarely rejected this reasoning, holding that it was "directly contrary to *Cummings,*" and added that it did not perceive what considerations would make the substantiality of time charges significant. The court referred to "other cases in which the charges were not important." *Id.* at 267, and cases cited. Time expended by an attorney, then, is but one of the many factors for a judge to consider in determining a fair and reasonable fee.

The exclusion of testimony concerning the fee charged by counsel for the NRA and the amount of time his firm spent in opposing the defendant's eminent domain cases was not reversible error. We observe that the plaintiff represented the party with the burden of proof, and came into the litigation after the defendant had permitted the cases to lie dormant for many years. In addition, the plaintiff was forced to prove a substantial portion of his cases using NRA's witnesses. Although counsel on both sides of the eminent domain litigation confronted similar facts and legal issues, their positions and preparation time were not necessarily comparable.

An offer of proof showed that the NRA was billed $23,105 for approximately 414 hours of time. Even if the time spent by the NRA counsel could be termed a fair approximation of the plaintiff's time, concerns of fairness and reasonableness do not mandate that the plaintiff's fee be predicated on an hourly charge. As stated earlier, an attorney's fee may well exceed an amount calculated by multiplying the hours of time billed by an hourly rate, and yet remain within the bounds of reasonableness. See *First Nat'l Bank* v. *Brink, supra.* Compare note 13, *supra.* The amount the NRA was billed for legal services is hardly relevant. Counsel was under contract to the NRA to charge at fixed hourly rates, presumably on a substan-

tial number of cases. While evidence of opposing counsel's time charges may be admissible in many circumstances to assist a reconstruction of an attorney's time, see *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 577 n.5 (1980), *S.C.* 384 Mass. 803 (1981), exclusion of such testimony was not error in the instant case.

e. *Prices charged for similar services in a similar area.* The judge found that the plaintiff's bill was an expression of the plaintiff's view that, after two trials and preparation of the brief for the Appeals Court, a fair and reasonable fee "would be in the amount that did not exceed the usual common fee of ⅓ the net amount plus the interest that had accrued through April 11, 1979." The judge also found the charge "not illegal or excessive" but "fair and reasonable." The plaintiff's expert, Mr. Masterman, testified that, among eminent domain lawyers, the ordinary and usual fee in the Greater Boston area that would be charged in a case such as the one the plaintiff represented the defendant in was "an amount . . . equal to no less than twenty-five percent to one-third of all sums recovered above the pro tanto, including interest," and that where the representation involved two Superior Court trials and two "appellate procedures," the amount would be "[o]ne-third of all sums recovered above the pro tanto including interest." Mr. Masterman did testify that he himself had only rarely undertaken representation of a client in an eminent domain proceeding without a written contingent fee agreement. However, when he was asked if his "opinion as to the ordinary and usual fee in the Greater Boston Area in a case such as this [would] turn in any way [on] whether there was a contingent fee agreement or not," Mr. Masterman replied, "No, it would not." Mr. Masterman is an established, active, and experienced attorney who had tried "maybe a thousand" eminent domain cases and who practices in the relevant geographic area. His testimony concerning the usual fees charged was based on his knowledge of the practice of local practitioners, of which, his background suggests, he was quite familiar. The plaintiff's testimony on this subject was substantially similar to Mr. Masterman's. There was no conflicting testimony, and we think the judge's findings were not clearly erroneous.

f. *Amount involved or value of property affected by controversy, and results secured.* The judge found that the plaintiff's efforts on behalf of the defendant "created an extraordinary result." Mr. Masterman testified that the result obtained by the plaintiff was "almost miraculous" and stated that it "doesn't happen. In all the hundreds of cases that I know about, to exceed the judge's finding by a little bit happens . . . [b]ut to double it [in the jury trial] is unbelievable." In fact, Mr. Masterman stated that normally a result of more than the pro tanto award is "smashing," and that even with a $1,300,000 appraisal, to double the $214,000 pro tanto at the bench trial was "a great result." The judge was justified in his findings.

4. The determination of a fair and reasonable attorney's fee requires an exercise of judgment involving the application of many diverse factors. The findings of a trial judge in these matters is entitled to considerable respect on review, and will not lightly be disregarded. See *McInerney* v. *Massasoit Greyhound Ass'n,* 359 Mass. 339, 352 (1971); *Kane* v. *Kane,* 13 Mass. App. Ct. 557, 560 (1982); *Meghreblian* v. *Meghreblian,* 13 Mass. App. Ct. 1021, 1023-1024 (1982), and cases cited. We have thoroughly reviewed the record and decide that the judge's consideration of the relevant factors was appropriate. As stated earlier, the weight given each factor will vary with the circumstances in each case. The judge found that the plaintiff was skilled and had great standing as an eminent domain attorney; the matter was complex; a large amount of money was involved; and a significant result was obtained. He also considered the time constraints imposed by the defendant, see S.J.C. Rule 3:07, DR 2-106 (B)(5), as appearing in 382 Mass. 772 (1981), who neglected to tell the plaintiff that the cases were marked "no continuances." From the record, it is evident that the defendant was in many respects a difficult client, and the judge's recognition of this[14] was proper. See

---

[14] The judge found that, in the course of the eminent domain proceedings, the defendant had retained and discharged no fewer than seven attorneys, including the plaintiff, prior to obtaining present counsel. He further found that one other attorney (in addition to the plaintiff), as well as two appraisers, found it necessary to place liens on the defendant's recovery before their fees were finally paid.

S.J.C. Rule 3:07, DR 2-106 (B)(6), as appearing in 382 Mass. 772 (1981). While we might have viewed the facts differently, we conclude that the attorney's fee awarded by the judge was within the range of reasonable discretion.[15] See *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9, 17-18 (1980).

*Judgment of the Superior Court affirmed.*

WILKINS, J. (dissenting). I agree with the opinion of the Appeals Court ordering a new trial. *Mulhern* v. *Roach,* 20 Mass. App. Ct. 322 (1985).

This case involves no new issue of law. The appellate function is essentially one of assessing a record to determine whether the judge's findings and conclusions were warranted on the record. The Appeals Court concluded, with firm conviction, that a mistake had been made, *id.* at 331, and it ordered a new trial. Any further review in this court simply involves us in second guessing the Appeals Court. Such a case particularly commends itself to the denial of any application for further appellate review.

---

[15] In contrast, we have applied "strictly conservative principles" to cases of all awards to counsel in the context of a "nonvoluntary relationship." *First Nat'l Bank* v. *Brink, supra* at 265, 266, and cases cited. See *Hayden* v. *Hayden,* 326 Mass. 587, 596 (1950); *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939); *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538, 543-544 (1985); *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9, 16 (1980).