JASON GAULIN *vs.* COMMISSIONER OF PUBLIC WELFARE
(and two companion cases[1]).

Hampden.   November 14, 1986. — March 31, 1987.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Civil Rights,* Attorney's fees.  *Attorney at Law,* Compensation.  *Interest.*

On appeal by the Commissioner of Public Welfare from an order allowing
interest on past-due attorney's fees assessed under 42 U.S.C. § 1988
(1982), in actions brought to enforce asserted civil rights, based on State
law and on § 1983, this court, affirming the order, concluded that the
order appealed from accorded with the Congressional policy of creating
a strong system of private enforcement of Federal civil rights and with
court decisions in other States allowing postaward interest against gov-
ernmental defendants. [747-750]

Discussion of how the State may proceed when it has a meritorious reason
for asking a court to postpone the obligation to pay attorneys' fees
assessed under 42 U.S.C. § 1988 (1982). [750-753]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment, two on July 28, 1982, and one on August 2, 1982.

After consolidation of the cases, motions for summary judg-
ment were heard by *Elizabeth A. Porada,* J.

*Despena Fillios Billings,* Assistant Attorney General, for
the defendant.

*J. Patterson Rae* for the plaintiffs.

*Allan G. Rodgers,* for Civil Liberties Union of Massachusetts
& others, amici curiae, submitted a brief.

KAPLAN, J. In these consolidated actions, brought to enforce
asserted civil rights, the plaintiffs based their claims on State
law and on 42 U.S.C. § 1983 (1982) (civil action for depriva-
tion of rights). As prevailing parties in these actions, the plain-

[1] Christopher Thomas *vs.* Commissioner of Public Welfare, and Daniel
Rivera *vs.* Commissioner of Public Welfare.

tiffs secured an award of attorney's fees pursuant to 42 U.S.C. § 1988 (1982) (vindication of civil rights; attorney's fees). The defendant State official paid the amount of the award, but after a period of delay. Accordingly the plaintiffs applied for post-award interest accrued during that period. From the order allowing such interest, the defendant appeals. We affirm the order for the reasons set out below. We go on to suggest how the State may proceed when it has a meritorious reason for asking a court to postpone the obligation to pay assessed fees.

1. We take, as typical of the consolidated cases, that of Jason Gaulin, a child three years old. He is the son of Patricia LaRochelle. The other members of Ms. LaRochelle's household are her children, Marsha and Dennis Delgado, aged six and seven years, who receive Social Security survivors' benefits because their father is dead; David LaRochelle, her present husband; and David LaRochelle, Jr., their son, six months old. Jason's father, Keith Gaulin, has not contributed to Jason's support. When the mother sought "general relief" pursuant to G. L. c. 117, §§ 1 et seq., on Jason's behalf, and for him alone, the Department of Public Welfare declined to consider the application; rather it required the mother to apply for herself and all four children. In refusing the combined application thus made, the Department attributed David LaRochelle's income to the mother and decided that his earnings were available to support her and all the children. This brought the group over the income baseline for general relief.[2] It was asserted on Jason's behalf that so to count the stepfather David LaRochelle's income in deciding Jason's eligibility not only violated the statute (G. L. c. 117, § 9) and regulations (106 Code Mass. Regs. § 313.520 [1979]), but also violated the due process and equal protection clauses of the United States Constitution (and provisions of the Massachusetts Constitution to the same effect) by discriminating invidiously against stepchildren claiming general relief in situations like Jason's, for the basic rule of law was that a stepfather was not obligated to furnish support for his stepchildren.

---

[2] The mother testified, however, that her husband was unable to support Jason and compelling him to do so would put a strain on the marriage.

The plaintiff exhausted administrative review and then applied to the Superior Court under G. L. c. 30A, § 14, by complaint filed in July, 1982. Upon cross motions for summary judgment, the court held for the plaintiff on State grounds (interpretation of the statute and regulations) without having to pass on the constitutional issues.[3] Judgment entered in November, 1982. The defendant Commissioner took an appeal from the decision,[4] and the Supreme Judicial Court granted direct appellate review. However, in September, 1983, there was a stipulation of voluntary dismissal, the defendant Commissioner having acceded to the plaintiff's view which allowed individual consideration of Jason's application without counting the stepfather's income.

In October, 1983, the plaintiff moved on affidavits for allowance of attorney's fees under 42 U.S.C. § 1988 (1982 & Supp. IV).[5] After discovery in connection with this motion, the judge made an award of $8,199.75 (in the three consolidated cases) on June 13, 1984. The Commonwealth paid this amount on September 28, 1984, after a delay of three and one-half months. Thereupon the plaintiffs moved for an order for interest on the award accrued during the period of delay. An order, in the amount of $286.99, was allowed;[6] a defendant's motion for reconsideration was denied; and it is the allowance of this item of interest that is the subject of the present appeal. (We have omitted from our narrative the substance of an affidavit offered by the defendant to explain the delay of payment. This will be discussed at point 3 below.)

---

[3] The ultimate reliance on State grounds does not render § 1988 inapplicable. See *Lund* v. *Affleck*, 442 F. Supp. 1109, 1113 (D.R.I. 1977), aff'd, 587 F.2d 75 (1st Cir. 1978).

[4] The plaintiff cross appealed from the judge's refusal of class-certification, but that appeal has not been pressed.

[5] Section 1988 provides in part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[6] There is no dispute about this amount, which is interest at 12% in accordance with G. L. c. 235, § 8, c. 231, §§ 6B, 6H. See n. 8 below. We suppose a State court may still follow State law in calculating the interest, cf. *Wilson* v. *Garcia,* 471 U.S. 261, 268-271 (1985); the question is not raised on the present appeal.

2. The courts of the Commonwealth are well acquainted with the § 1988 provision for reasonable attorney's fees payable to the prevailing parties in civil rights actions against State officials grounded on 42 U.S.C. § 1983 (1982) or certain other Federal enactments which, at plaintiff's election, may be instituted in State courts. See *Draper* v. *Town Clerk of Greenfield,* 384 Mass. 444 (1981); *Stratos* v. *Department of Pub. Welfare,* 387 Mass. 312 (1982); *Mulhern* v. *Roach,* 398 Mass. 18, 27 & n.13 (1986). Section 1988 is "appropriate legislation" of the Congress "to enforce the provisions" of the Fourteenth Amendment within the meaning of § 5 thereof. See Senate Report (Judiciary Committee) No. 94-1011, at 5 (1976), to accompany S. 2278, which passed as P. L. 94-559, 90 Stat. 2641 (1976), amending 42 U.S.C. § 1988 (1976). The effect of the statute is to overcome any inconsistent claim that a State official, as defendant, may advance under the banner of the sovereign immunity of the State. See *Hutto* v. *Finney,* 437 U.S. 678, 693-700 (1978); *Maher* v. *Gagne,* 448 U.S. 122, 132 (1980). For this purpose it does not matter whether the civil rights enforcement action against a State defendant is brought in State or Federal court. See *Maine* v. *Thiboutot,* 448 U.S. 1, 10-11 & n.12 (1980); *Ferdinand* v. *Fairbanks,* 599 P.2d 122, 125 (Alaska 1979). Cf. *Thompson* v. *Hales Corners,* 115 Wis. 2d 289, 304 (1983). So also § 1988 imports a Federal standard for a court, whether State or Federal, in deciding what is the reasonable fee. See *Stratos* v. *Department of Pub. Welfare,* 387 Mass. at 320-325.[7] Such were the bases for the award of the attorney's fee in the present case.

Although § 1988 does not speak in so many words about interest accruing on an award of attorney's fees when there is a delay of payment by the State, the general practice of the Federal courts is to allow such interest. Thus in *Preston* v. *Thompson,* 565 F. Supp. 294, 297 (N.D. Ill. 1983), the court

---

[7] Adherence to that standard, however, still allows some range of choice to the courts, so that, for example, a Massachusetts court need not follow the "lodestar" method of calculation favored by some Federal courts. See *Stratos,* 387 Mass. at 322; *Mulhern* v. *Roach,* 398 Mass. 18, 27 & n.13 (1986).

said, citing considerable authority, "Every reported case to address the issue has held that interest is available on an award of attorney's fees under § 1988." See also *Preston* v. *Thompson,* 565 F. Supp. 310, 320-321 (N.D. Ill. 1983). Characteristic decisions are *Gates* v. *Collier,* 616 F.2d 1268, 1275-1276 (5th Cir.), modified, 636 F.2d 942 (1980), rehearing en banc denied, 641 F.2d 403 (1981); *Spain* v. *Mountanos,* 690 F.2d 742, 747-748 (9th Cir. 1982); *R.W.T.* v. *Dalton,* 712 F.2d 1225, 1234-1235 (8th Cir.), cert. denied, 464 U.S. 1009 (1983). Cf. *Wojtkowski* v. *Cade,* 725 F.2d 127, 129 (1st Cir. 1984). The practice with respect to post-award accrual of interest parallels that regarding interest due upon ordinary money judgments, and the courts, indeed, in awarding post-award interest, often refer to 28 U.S.C. § 1961 (1982),[8] the statute applied in Federal courts that deals in general terms with interest owing on unpaid judgments for money. See, e.g., *R.W.T.* v. *Dalton,* 712 F.2d at 1235; *Preston* v. *Thompson,* 565 F. Supp. at 300.[9]

---

[8] For many years § 1961 provided:

"Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law."

Section 1961, as recently amended, provides in subsection (a) and (b):

"(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

"(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually."

(Subsection [c] is not reproduced.)

[9] As indicated, many Federal courts appear to allow post-award interest as a matter of course. Sometimes courts use language with a permissive ring

Section 1961 cannot be directly invoked when it is a State court that has made an award of fees under § 1988, but the liability of the State for post-award interest is alike regardless of the forum. It stems from those considerations of policy which led to fee-shifting in civil rights litigation by statutory statement and nonstatutory development, and which manifested themselves strikingly in the 1976 amendment of § 1988.[10] Broadly speaking, the Congressional intention has been to create a strong system of private enforcement of Federal civil rights. The prospect of recovering reasonable (not extravagant) attorney's fees encourages the initiation and conduct of worthwhile litigation in this field that might otherwise never be brought (note that plaintiffs are often without resources and that this kind of litigation commonly results in injunctive or declaratory relief rather than money judgments). The threat of superadded liability for the opponent's legal expenses tends to deter abuses of governmental power. Where excesses are found to have occurred, the substantial financial burdens of corrective litigation are put where they justly belong. These and complementary motives were expressed during the passage of the 1976 legislation, and likewise appear in the decided cases. See the forceful statement in S. Rep. No. 1011, and *Gates* v. *Collier,* 616 F.2d at 1274-1275; *Furtado* v. *Bishop,* 635 F.2d 915, 918 & n.5 (1st Cir. 1980).

---

(query whether designedly), but it is commonly accompanied with a statement that § 1988 is to receive a liberal interpretation, which invites the allowance of post-award interest. See, e.g., *Gates* v. *Collier,* 616 F.2d at 1275.

[10] The Reconstruction Civil Rights Acts did not carry provisions for fee-shifting, as many later statutes did, but lower Federal courts had utilized the "private attorney general" concept to award attorney's fees to prevailing parties in litigation under the Reconstruction Acts as well. In 1975, the Supreme Court in *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc.,* 421 U.S. 240, held that it was for Congress to designate when fee-shifting was appropriate. The amendment of 42 U.S.C. § 1988 in 1976 was the Congressional response, filling the gap created by the *Alyeska* case. (For the strategic reason why § 1988 speaks of attorney's fees as "costs," see *Morrow* v. *Dillard,* 580 F.2d 1284, 1299-1300 [5th Cir. 1978], citing *Fairmont Creamery Co.* v. *Minnesota,* 275 U.S. 70 [1928].)

In such a regime, it is entirely appropriate to charge interest for delayed payment of assessed fees. Besides the ordinary justifications for interest, a rule which would free a State of that interest obligation would work against the basic policies mentioned: it would dilute the encouragement of putative plaintiffs and their counsel to commence proper actions and would give State defendants, as losers, an extraneous motive to delay payment. If, in the end, fees awarded as reasonable were paid after delays, net of interest, the effect as a practical matter would be to reduce those fees by indeterminate amounts without an explicable logic. See *Gates* v. *Collier,* 616 F.2d at 1275-1276; *R.W.T.* v. *Dalton,* 712 F.2d at 1234-1235; *Johnson* v. *Summer,* 488 F. Supp. 83, 85-88 (N.D. Miss. 1980); *Wells* v. *Hutchinson,* 499 F. Supp. 174, 212 & n.54 (E.D. Tex. 1980). For State court decisons allowing post-award interest against governmental defendants, see *Indiana Hosp. Licensing Council* v. *Women's Pavilion,* 486 N.E.2d 1070, 1074 (Ind. App. 1985); *Willson* v. *Des Moines,* 386 N.W.2d 76, 79 (Iowa), cert. denied, 479 U.S. 948 (1986); *Amarillo* v. *Langley,* 651 S.W.2d 906, 916 (Tex. App. 1983). Thus we conclude that the order appealed from, charging interest on past due attorney's fees assessed under § 1988, accords with Congressional policy and judicial authority.

3. The defendant Commissioner, although recognizing the obligation of the State for the reasonable attorney's fee awarded herein under § 1988, denied any consequent obligation of the State for post-award interest.

First, the Commissioner argued that whereas the sovereign immunity of the State cannot be set up as a barrier to the obligation to pay the principal amount of the assessed § 1988 fees (the State in fact paid that amount), the immunity may be interposed with respect to interest.[11] This notion, if upheld,

---

[11] The Commissioner has referred to *C & M Constr. Co.* v. *Commonwealth,* 396 Mass. 390 (1985), where the court, in the absence of a statutory waiver of immunity, denied post-judgment interest against the Commonwealth. Of course, there was no Federal imperative in the picture abrogating the immunity. The same may be said of the denial of interest on attorney's fees allowed in actions under G. L. c. 93A. *Patry* v. *Liberty Mobilehome*

would reverse and put at naught the formidable lines of authority cited above. To support his proposition, the Commissioner has cited the case of *Library of Congress* v. *Shaw*, 478 U.S. 310 (1986) (6-3 decision). The Library as an agency of the United States was the defeated defendant in an action by a private person for job-related racial discrimination under Title VII of the Civil Rights Act of 1974, which in § 706(k) (42 U.S.C. § 2000e-5[k] [Supp. IV 1974]) provides for "a reasonable attorney's fee as part of the costs" in favor of such a prevailing party. The Court held that the United States was not bound to pay pre-award interest forming part of a fee award pursuant to § 706(k).[12] This result followed from an iron bound "no-interest rule" (478 U.S. at 321-322) which had been notoriously in force for well over a century: the United States cannot be cast in interest, whether pre- or post-judgment, except by a Congressional enactment "affirmatively and separately" (478 U.S. at 315) prescribing that obligation. The Court would not indulge in considerations of policy: "Theirs not to reason why." The Court virtually confesses the anomaly. It nowhere indicates that the States may now assert any similar immunity to interest on a fee award made pursuant to § 1988 or a similar enactment, and no inference to that effect would be justified.

Second, failing reliance on the *Library of Congress* case, the Commissioner points to the administrative difficulty experienced by State officers in providing prompt payment of the award of fees herein as a reason for being excused the payment of interest during the period of delay. An affidavit of the deputy commissioner for accounts and Federal revenue of the finance division of the Department of Public Welfare, offered in apparent opposition to the plaintiff's application for payment of interest, stated that the court's order of June 13 awarding fees

---

*Sales, Inc.*, 394 Mass. 270, 272 (1985). Neither party in the present case referred to or relied on the State civil rights statute, G. L. c. 12, §§ 11H-J, and we do not discuss it.

[12] That is, an increase of the "lodestar" amount to compensate for the fact that legal expenses were incurred well before the date of the award of fees. Allowance of such pre-judgment interest is unusual in attorney's fee awards, see *Wojtkowski* v. *Cade*, 725 F.2d at 129.

was received in the legal division on June 20; prior to June 15 the affiant's office had notified the legal division that with the approaching end of fiscal year 1984, payment requests for services during that year must be made before June 15, otherwise checks could not be promised by June 30; separate accounts payable were set up by the Commonwealth for unpaid services and carried over to fiscal year 1985 and made available by July 9; the legal division made request to the affiant's office after July 9 for payment of the fees; the affiant was then on vacation; the request was processed commencing on August 28; usually three or four weeks intervene for clearance through the Department, the State Comptroller's office, and the Governor's Council before issuance of a check by the State Treasurer; and payment was made on September 28.

For present purposes we need not question the efficiency of the process of securing official payment of the fee award in this case. The administrative steps may appear lumbering but they perhaps have some function in avoiding chicane or corruption. We think a court might well be sympathetic in a given case to a submission by the State that the obligation to pay a fee award should be postponed for a stated period — that there should be an interest-free interval — to allow for processing the payment. Such play in the joints does not appear incompatible with the federally imposed duty. Compare n. 7. We find evidence of a few suggestive arrangements for relief of this sort made by the courts at the time and as part of the awards of fees.[13] We think a court may consider such proposals by State

---

[13] Thus in *Davis* v. *County of Los Angeles,* 8 Employ. Pract. Dec. (CCH) par. 9444 (C.D. Cal. 1974), under Title VII, Civil Rights Act of 1964 (cited approvingly in the S. Rep.), a thirty-day leeway for payment appears; the same occurred in *United Nuclear Corp.* v. *Cannon,* 564 F. Supp. 581, 593 (D.R.I. 1983), under § 1988. Note that, by G. L. c. 79, § 37, a judgment for land damages against the Commonwealth does not bear interest if satisfied within thirty days of its entry. Compare the payment provisions in *Morrow* v. *Finch,* 642 F.2d 823, 826 (5th Cir. 1981); *McPherson* v. *School Dist. No. 186, Springfield,* 465 F. Supp. 749, 765 (S.D. Ill. 1978); *Burston* v. *Virginia,* 595 F. Supp. 644, 652 (E.D. Va. 1984); *Vaughns* v. *Board of Educ. of Prince George's County,* 598 F. Supp. 1262, 1290 (D. Md. 1984).

It would be a quite different matter to relieve a State defendant of interest justly due on the State's plea of poverty. This was allowed in *Glover* v.

defendants when justified on the facts, kept within bounds, and not made a cover for indefinite protraction of the process which would diminish the value of the reasonable fees awarded. We stress, however, that any arrangement of the kind should be made at the time of the award. Less plausible is it for the State to attempt to plead excuse for late payment, as it did here, when no adjustment was provided in the award itself. This procedure is objectionable if for no other reason than that it invites evidence and counter evidence about just when the processing became unduly extended and the State became chargeable with interest. The unavoidable burden thrown on the courts to rule on applications for attorney's fees ought not be aggravated unnecessarily by that sort of inquiry.[14]

*Order affirmed.*

---

*Johnson,* 531 F. Supp. 1036, 1046-1047 (E.D. Mich. 1982), a case disapproved in *Preston* v. *Thompson,* 565 F. Supp. at 299.

[14] We acknowledge the submission of a brief on behalf of the Civil Liberties Union of Massachusetts, Center for Public Representation, Disability Law Center, Greater Boston Legal Services, Lawyers' Committee for Civil Rights, and Massachusetts Law Reform Institute, as friends of the court.