van Gestel, J.
The underlying litigation has been resolved. All that remains for determination is resolution of a dispute as to the sharing of attorneys fees between the plaintiffs present counsel, Giarrusso, Norton, Cooley & McGlone (“GNCM”), and her former counsel, Thornton, Early & Naumes (“TEN”). The contestants agreed to have the issue decided by this Court “following the usual practice and procedures used in determination of attorney fee lien disputes pursuant to G.L.c. 221, secs. 50 and 51.”
*615 There is not here, of course, an attorney’s lien. The total of all fees and expenses owed by the plaintiff has already been deducted from the settlement approved by this Court on July 21, 1999. Thus, the plaintiff herself has no further obligations for fees or expenses to either GNCM or TEN.
After an evidentiary hearing, the Court finds the following facts and makes the following rulings of law.
From April 1994 until October 12, 1998, Michael J. McDevitt (“McDevitt”) was employed as an associate lawyer at TEN. On October 12, 1998, McDevitt left TEN, on friendly terms, and joined GNCM.
In early March 1998, John Hegarty was killed in an accident, while working on the Central Artery “Big Dig” project in Boston. Mr. Hegarty had been a friend of McDevitt since their first meeting as workers on Representative Brett’s campaign for Mayor of Boston. Both men had roots in the Savin Hill area of Dorchester, and they shared many friends and acquaintances.
McDevitt was engaged as counsel by Patricia Hegariy, Mr. Hegarty’s widow and the administratrix of his estate. She executed a contingent fee agreement with TEN on April 1, 1998.
About a year later, on April 22, 1999, the Hegariy case was settled for $3,750,000, producing attorneys fees of $937,000, pursuant to a later contingent fee agreement executed with GNCM after McDevitt joined that firm and Mrs. Hegarty followed him there. It is the allocation of this fee between GNCM and TEN that is now in dispute.
The first order of business is for this Court to determine whether there was an agreement between McDevitt and TEN as to the handling and sharing of fees and expenses on the Hegarty case and other cases that followed McDevitt to GNCM. Both sides insist that there was, but reveal some uncertainty as to its contours.
McDevitt’s memory is that on any case he took with him, TEN would be reimbursed for the expenses that firm incurred while the case was with it, and TEN would be paid for the hours McDevitt worked on the case while at TEN.
David McMorris, a TEN partner, recalls a discussion in early October 1998, at which it was said that TEN would be compensated by a percentage of any fee recovered — the percentage to be determined on a case-by-case basis — but in no event would the percentage be less than one-third. McMorris testified that TEN partner Robert T. Naumes (“Naumes”) was to write up the arrangement.
The only writing by Naumes presented to this Court was his affidavit dated August 7, 1999. By this time the two law firms were gearing up for the hearing on this fee dispute and, presumably, their focus on the issue was sharpened. In paragraphs 10 and 11 of his affidavit, Naumes described two agreements with Mc-Devitt as follows:
10. On or about October 8, 1998, David McMorris and I met with McDevitt to resolve any issues concerning his departure from the firm. During the course of that meeting, an agreement was reached wherein McDevitt would compensate TEN a percentage of any fee recovered on cases he took with him, with an agreement to agree on what would be paid on such cases. It was the understanding of the parties that this percent would depend on the amount of work performed by TEN on such cases. There was never any discussion of being paid on an hourly basis instead of a percentage basis.
11. During that meeting, an agreement was also reached concerning cases that McDevitt had generated while at TEN that would remain at TEN, wherein TEN would compensate McDevitt one-third of any fee recovered on such cases.
TEN will be held to the agreements as recited by its name partner Robert Naumes. The agreement regarding cases that followed McDevitt to GNCM included no one-third minimum. Thus, the Court next must settle upon a fair and appropriate percentage for TEN in the Hegarty case.
While simply adding up hours invested in the case should not be the controlling factor, hours do shed some light on the subject. At the same time, the Court is cognizant that in any case there may be a moment of high skill or brilliance in presentation that carries the day, but is relatively short in temporal duration. Indeed, in any case that goes to trial, what happens in the courtroom is generally only a fraction of the time spent on the case but if properly done, can make the critical difference between winning and losing, collecting or walking away empty-handed. However, like any other staged event, the trial will go nowhere without the pre-trial foundation to support it.
At the outset of this analysis it bears repeating that this is not a claim between an attorney and his former client. If it were, then the Court would measure TEN’S entitlement on a quantum meruit basis and determine the fair value of the services rendered. See, e.g., Opert v. Mellios, 415 Mass. 634, 636 (1993); Salem Realty Co. v. Matera, 384 Mass. 803, 804 (1981). Here, the Court is enforcing the terms of an agreement between two law firms. An oral agreement precludes one lawyer “from recovering in quantum meruit against" the other. Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993).
There are a number of Massachusetts cases discussing the elements to be considered by a court in assessing attorneys fees. Among them are: Mulhern v. Roach, 398 Mass. 18, 24-5 (1986); Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629-630 (1978); First-Nat’l Bank v. Brink, 372 Mass. 257, 265-67 (1977). Helpful as those cases may be, however, they tend to provide guidance only in evaluating the work of the lawyer seeking the fee. The Court in this case already knows the gross amount of the fee. It is *616 the fair allocation of that fee that is at issue. Here, while at TEN, McDevitt himself did 95% of the work; and while at GNCM he contributed somewhat over 40% of the work. But Naumes insists that the time spent is not the measuring criterion.[1] Thus, applying the usual criteria to value a lawyer’s efforts is only of marginal assistance to the Court.
Accepting McDevitt’s attempts at reconstructing the hours expended at TEN (whose lawyers do not keep time records) with those spent by GNCM lawyers (who do maintain time records) suggests that about 30% of the total time spent on the case was expended at TEN, essentially all by McDevitt. Naumes, of course, insists in his affidavit that “(t]here was never any discussion of being paid on an hourly basis instead of a percentage basis.”
Much of the work accomplished at TEN was of a routine nature. So, too, was much of the work at GNCM. The key to the successful settlement of the Hegarty case was the completion of the investigation of the facts and the packaging and presentation of the mediation proceeding. It was those latter efforts — all done at GNCM, and led by one of its partners — that produced the $3,750,000 settlement with the $937,500 contingent fee.
After careful reflection upon all of the factors involved, this Court assigns the following percentages to the $937,500 fee for the purposes of allocation between GNCM and TEN: 50% to GNCM for the mediation presentation and related matters; 35% to GNCM for the necessary but routine work of getting the case ready for the final push; and 15% to TEN for the work done at that firm, mostly by McDevitt while in TEN’S employ.
ORDER
For the reasons stated above, the Court awards to Thornton, Early & Naumes a total fee of $140,625, including therein its out-of-pocket expenses of $5,253.08, said amount to be paid out of the $937,500 fee received by GNCM as a result of the Court-approved settlement in the underlying claim.

 This is a valid and not surprising position for a lawyer in a firm that does not keep a record of time worked on any of its cases.