# WHTR Real Estate Limited Partnership[1] *vs.* Venture Distributing, Inc.,[2] & another.[3]

No. 03-P-950.

Essex. October 15, 2004. - April 12, 2005.

Present: Perretta, Doerfer, & Mills, JJ.

*Landlord and Tenant,* Subletting, Attorney's fees. *Real Property,* Lease. *Consumer Protection Act,* Lease, Attorney's fees. *Contract,* Lease of real estate. *Evidence,* Admitted de bene. *Practice, Civil,* Findings by judge, Attorney's fees, Costs.

In a civil action for breach of a commercial lease, the judge applied the correct legal standard in ruling that the landlord could not be liable on the tenant's claim that the landlord had breached the lease by unreasonably withholding consent to a sublease, where the tenant had not secured a subtenant ready, willing, and able to perform the tenant's obligation under the lease. [232-233]

In a civil action, the judge's allowance of a motion to strike de bene evidence, even if error, did not amount to prejudicial error. [234-235]

There was no merit to the claim that the judge's findings of fact in a civil action were clearly erroneous. [235]

In a civil action for breach of a commercial lease, in which attorney's fees and costs were awarded to the landlord pursuant to the lease agreement between the parties and a guaranty, which provided for payment of the prevailing party's reasonable attorney's fees and costs in the event of a dispute concerning the lease, the judge did not abuse her discretion in awarding less in fees and costs than the landlord requested, where the judge considered appropriate factors and was not required to make specific findings as to the amounts deemed unreasonable [235-237]; further, this court declined to adopt a principle of law treating a fee provision in a contract as an indemnity provision to deter frivolous litigation [237-238].

CIVIL ACTION commenced in the Superior Court Department on April 18, 1997.

The case was heard by *Barbara J. Rouse,* J., and a motion for attorney's fees and costs was also heard by her.

[1]As assignee of Commerce Way Limited Partnership.
[2]Formerly known as Landsdowne Ltd., Inc.
[3]United Liquors, Ltd.

*Richard C. Pedone* (*Victor G. Milione* with him) for the plaintiff.

*Kevin F. Moloney* (*Roger T. Manwaring* with him) for the defendants.

MILLS, J. After a jury-waived trial, a Superior Court judge made findings and ruled that the defendant tenant, Venture Distributing, Inc. (the tenant), had breached its commercial lease with the plaintiff landlord, WHTR Real Estate Limited Partnership (the landlord), by failing to pay rent. The judge ordered judgment in favor of the landlord in the amount of $281,669.03, and awarded attorney's fees in the amount of $140,000 and costs of $7,500 to the landlord. The tenant's two counterclaims, alleging that the landlord had breached the lease by unreasonably withholding consent to a sublease with a potential subtenant and that the landlord had scuttled negotiations between the tenant and potential subtenant, in violation of G. L. c. 93A, were dismissed.[4] Both parties appeal. The tenant argues that the judge applied an incorrect legal standard in her rulings, improperly struck evidence that had been admitted de bene, and made erroneous subsidiary findings of fact. The landlord claims that the judge abused her discretion by failing to award the full sum of attorney's fees that the landlord had requested. We affirm.

1. *Background.* The judge made thirty-five paragraphs of careful findings, narrating the six-week course of dealing among the landlord, tenant, and a potential subtenant. The tenant leased commercial space in Woburn (the Woburn space) from the landlord. To cut costs the tenant decided to relocate and hired a broker (Levine) to find a subtenant. Levine contacted USCO Distribution Services, Inc. (USCO), which was seeking to lease new space and, on or about March 15, 1996, sent a letter of intent for a sublease of the Woburn space between the tenant and USCO, "as is." USCO did not accept the tenant's offer; instead, it made a counteroffer, with added conditions, on March 19, 1996.

The tenant did not respond to USCO's March 19, 1996,

---

[4]The lease states that the tenant "shall not assign, sublet . . . this lease without Lessor's prior written consent, which consent shall not be unreasonably withheld or delayed."

counteroffer. On March 22, 1996, the tenant's lawyer (Bennett), without addressing the conditions in the counterproposal, prepared a draft sublease and forwarded it to USCO's in-house counsel. That lease was never forwarded to USCO's executive officer (Sauder), who had primary responsibility for finding the needed new space. Also on March 22, 1996, the tenant's executive officer (Gack), without discussing with USCO its counterproposal or the proposed sublease, forwarded a copy of that sublease to the landlord with the notation: "Please examine sublease and sign consent if agreeable. Have you made any progress on 21E study? Please call me if I can be of any help."[5]

Shortly thereafter, the landlord requested that Gack furnish a financial statement on USCO, as well as other information. In response, Gack obtained a Dunn & Bradstreet report, but did not forward it to the landlord until April 12, 1996. Other information requests from the landlord to the tenant went unanswered. Throughout the time that the tenant was negotiating with USCO, USCO was actively negotiating for other space, from a different owner, in Chelmsford (the Chelmsford space). Those negotiations included a rapid and active exchange of multiple documents and drafts.

On March 26, 1996, USCO conducted a "walk-through" of the Woburn space, and thereafter USCO's Sauder prepared a list of seventeen items that "need repair/testing prior to [USCO] signing a lease." The list was sent to the tenant's broker the next day, but the tenant did not receive it until April 11, 1996. USCO and the tenant never reached agreement with respect to the listed items or several other items identified in the documents exchanged between them.

Beginning in early April, the pace of negotiations between USCO and the Chelmsford owner accelerated, and on April 15, 1996, USCO's broker informed USCO's counsel that USCO's counterproposal to the Chelmsford owner had been accepted. On April 29, 1996, USCO entered into a lease for the Chelmsford space.

Other aspects of the negotiations and communications between the landlord and tenant are narrated by the judge in her

---

[5]Prior to March 22, 1996, pursuant to USCO's request, Gack had requested an environmental ("21E") report from the landlord.

findings. Responses by the tenant to information and document requests from the landlord with respect to the proposed subtenancy were slow or nonexistent. The tenant was less than diligent in its attention to detail. The tenant never completely addressed the counterproposal items enumerated by USCO to the tenant on March 19, and the sublease prepared by the tenant was done without the necessary consultation with USCO or the landlord, or attention to other items noted by USCO as conditions to a sublease. A sublease proposed by USCO and sent to the landlord on April 17, 1996, contained several unresolved issues.

A sublease was, in any event, never executed between USCO and the tenant, and never presented to the landlord for its consent. The judge found that the tenant, not the landlord, was responsible for the failure of consummation of a sublease agreement between the tenant and USCO, and it is essentially stipulated that the landlord was never presented with a sublease for its approval.

2. *The legal standard.* The tenant first argues that the judge applied an incorrect legal standard when she ruled that, in the circumstances, the landlord could not be liable on the tenant's complaint unless a fully consummated sublease had been presented for the landlord's consent. The tenant, relying upon *Stern's Gallery of Gifts, Inc.* v. *Corporate Property Investors, Inc.*, 176 Ga. App. 586 (1985), and *Golf Mgmt. Co.* v. *Evening Tides Waterbeds, Inc.*, 213 Ill. App. 3d 355 (1991), argues that a landlord unreasonably withholds consent to a sublease if, as alleged here, the landlord, through its recalcitrance or interference, causes the failure of sublease negotiations or maintains a "policy" to refuse subleases, even in the absence of a consummated sublease. While the tenant acknowledges that it failed to secure a sublease agreement with USCO, it blames that failure on the landlord and argues that the judge's ruling was incomplete and that the tenant needed only to provide evidence of "a probable future business relationship from which there is a reasonable expectancy of financial benefit." *Owen* v. *Williams*, 322 Mass. 356, 362 (1948).

The judge made numerous rulings. Among them was a ruling that a landlord is not in default for failure to consent unless the

tenant produces a candidate ready, willing, and able to fulfil the tenant's obligations under the sublease.[6] The tenant has not persuaded us that the judge ruled in error.

The tenant further argues that the judge's ruling was too narrow, as it "improperly applied a legal standard that accords protection only to negotiations that virtually are complete . . . [whereas] . . . any negotiation or relationship which is likely to result in an economically beneficial agreement is entitled to protection." We need not determine whether the judge's ruling was too narrow. Any benefit to the tenant from an expanded rule is obviated by the judge's conclusions, amply supported by her findings, that

> "[t]here is no evidence that the parties were even close to resolving the terms of the sublease, not to mention agreement that USCO would be bound by all terms of the lease. Nor is there any evidence that USCO and [the tenant] had agreed on the terms of the sublease orally and simply needed to reduce them to writing. [The tenant] argues that 'the parties ultimately might have agreed that USCO would be bound to all provisions of the lease' but this matter is left to speculation. There were too many uncertainties and unresolved issues to legally bind either USCO or [the tenant]. It was incumbent on [the tenant] to secure a subtenant ready, willing, and able to perform [the tenant's] obligations under the lease. This it did not do. There never was a legally enforceable agreement between [the tenant] and USCO to which the landlord could consent."

---

[6]In her ruling, the judge relied upon *Worcester-Tatnuck Square CVS, Inc.* v. *Kaplan*, 33 Mass. App. Ct. 499, 503-506 (1992), and 1 Friedman, Leases § 7.304b (4th ed. 1997) (A "[l]andlord is not in default for failure to consent to an assignment or sublease unless tenant produces a candidate ready, willing, and able to fulfill obligations"). The tenant argues that her ruling was error, relying upon *Stern's* and *Golf Management. Stern's* is distinguishable and not persuasive because its holding is limited to the circumstances of that case where a landlord explicitly announced a "long standing policy" of refusing to permit subletting. *Stern's Gallery of Gifts, Inc.* v. *Corporate Property Investors, Inc.*, 176 Ga. App. at 596. *Golf Management* does not support the tenant's argument. In that case, the tenant complied with the requirement that it "[tender] a subtenant who was ready, willing and able to take over the lease and who, at the very least, met reasonable commercial standards." *Golf Mgmt. Co.* v. *Evening Tides Waterbeds, Inc.*, 213 Ill. App. 3d at 361. In *Golf Management* there was a definite offer from the subtenant.

3. *Admission of de bene evidence.* The tenant argues that the judge's action on the landlord's motion to strike certain testimony by witness Levine was ambiguous and thus created prejudicial error. The tenant's brief sets forth the testimony (most of which was not objected to) and the landlord's single objection to the last of a series of questions. The discussion surrounding the objection includes the judge's comment: "I am taking Mr. Nelson de bene because if he doesn't come in and testify to it, I will take your motion, allow it, and strike it. But he can testify as to what he said to Mr. Nelson at a minimum." The testimony thereafter was innocuous and hardly prejudicial to the tenant.

At the close of the trial in December, 2001, the landlord filed a motion "to strike certain *de bene* evidence" (emphasis original). The judge endorsed a ruling on this motion in August, 2002, "allow[ing] this motion to the extent that it refers to testimony which did not satisfy the requisite requirements for admissibility."

The tenant complains that it is impossible to know what, if any, portion of Levine's testimony about conversations with other witnesses who testified at trial the judge thought had been admitted de bene; what, if any, portion of the testimony the judge was striking; for what, if any, reasons; and what standards, if any, the judge had applied when rendering her decision. The tenant's complaints are mainly correct. However, even if the testimony of witness Levine had been erroneously considered by the judge as inadmissible, and thus improperly struck, this court reviews the judge's decision to strike evidence for prejudicial error. See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 752 (1996). "[E]rroneous exclusion of relevant evidence is reversible error unless, on the record, the appellate court can say with substantial confidence that the error would not have made a material difference." *DeJesus* v. *Yogel*, 404 Mass. 44, 49 (1989). A review of the record discloses that admission of the de bene evidence would not have made a material difference in the outcome of the trial. The tenant has not "made a plausible showing that the trier of fact might have reached a different result if the evidence had been before it." *Id.*

at 48-49. Thus, there was no prejudicial error. See *Cohen* v. *Liberty Mut. Ins. Co., supra* at 753.

4. *Alleged errors in the findings of fact.* The tenant analyzes, virtually paragraph by paragraph, the judge's findings and asserts them to be clearly erroneous in numerous and material respects. The landlord asserts that the tenant has failed to identify a single material fact that is misstated or omitted by the judge. We agree with the landlord. We have read the entire record. The judge prefaced her findings with the statement that they were based upon all of the credible evidence, stipulations, and fair inferences therefrom. The transcript reflects that the judge paid careful attention to the evidence. None of the judge's findings is clearly erroneous, and as we have earlier said, her ultimate findings are supported.

5. *Alleged abuse of discretion in award of attorney's fees and costs.* Attorney's fees and costs were awarded to the landlord pursuant to the lease agreement between the parties and the guaranty, which provide for payment of the prevailing party's "reasonable" attorney's fees and costs in the event of a dispute concerning the lease. The landlord argues that the judge erred in awarding less in attorney's fees ($140,000) and costs ($7500) than the landlord requested ($307,321.72 in fees and $15,951 in costs).

We review the judge's award of attorney's fees and costs for abuse of discretion. *McGrath* v. *Mishara,* 386 Mass. 74, 87 (1982). *J.P. Constr. Co.* v. *Stateside Builders, Inc.,* 45 Mass. App. Ct. 920, 921 (1998). The judge's decision will be reversed only if it is clearly erroneous. *Cargill, Inc.* v. *Beaver Coal & Oil Co.,* 424 Mass. 356, 363 (1997).

The party seeking attorney's fees bears the burden of showing that the amount sought is reasonable. *Stowe* v. *Bologna,* 417 Mass. 199, 204 (1994) (plaintiffs required to convince judge that request for attorney's fees was reasonable, even where submissions were uncontroverted). *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538, 541 (1985) S.C., 22 Mass. App. Ct. 982 (1986) (party seeking fees bears burden of showing reasonable amount).

The landlord, citing *Fontaine* v. *Ebtec Corp.,* 415 Mass. 309, 324-325 (1993) (*Fontaine*), argues that the judge committed

clear error by not using the lodestar approach[7] to calculating reasonable attorney's fees. The landlord is incorrect. *Fontaine* does not require use of the lodestar approach; rather, it states that such an approach may be advantageous. See *id.* at 325. In *Fontaine*, the court considered a plaintiff's claim that a fee calculated by the lodestar method, in that specific case, was inadequate and should be enhanced. The court acknowledged that statutory fee awards may be enhanced in limited circumstances, but that enhancement was not warranted in the case before it. Most cases in which the court has endorsed the lodestar method have involved the vindication of rights under statutory law. See, e.g., *Stratos* v. *Department of Pub. Welfare,* 387 Mass. 312, 322-323 (1982); *Fontaine* v. *Ebtec, supra.* See also *Berman* v. *Linnane,* 434 Mass. 301, 303 (2001) ("approv-[ing]" of lodestar test, but not requiring it); *Gaulin* v. *Commissioner of Public Welfare,* 23 Mass. App. Ct. 744, 747 n.7 (1987) ("a Massachusetts court need not follow the 'lodestar' method of calculation").

In the present case, the award of "reasonable" attorney's fees and costs to the prevailing party is part of a contractual agreement (the lease) between the parties. In such cases courts typically analyze a variety of factors, including "ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by the controversy, and the results secured." *Northern Assocs., Inc.* v. *Kiley,* 57 Mass. App. Ct. 874, 882 n.17 (2003), quoting from *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933).[8] See *Margolies* v. *Hopkins,* 401 Mass. 88, 93 (1987) (affirming fee award calculated without lodestar method); *Raymond Leasing Corp.* v. *Callico Distributors, Inc.,* 62 Mass. App. Ct. 747, 752 (2005) (approving use of "well-established criteria set out in *Cum-*

---

[7]A fee calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate is generally referred to as a "lodestar" award. *Fontaine* v. *Ebtec Corp.,* 415 Mass. at 324.

[8]In *Northern Assocs., Inc.* v. *Kiley,* 57 Mass. App. Ct. at 882, involving a disputed commercial lease, we affirmed an award of reasonable fees calculated without the lodestar method.

*mings* v. *National Shawmut Bank*" to request for attorney's fees under lease).

The judge in the present case considered appropriate factors ("the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and the ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases"), quoting *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979). The omission from the judge's memorandum and order of explicit findings as to a fair market hourly rate and the exact number of hours reasonably spent on the case is not abuse of discretion or clear error.

The judge was not required to make specific findings as to the amounts deemed unreasonable when awarding less in fees and costs than the landlord requested. *Berman* v. *Linnane*, 434 Mass. at 303 (judge "not required to review and allow or disallow each individual item in the bill, but could consider the bill as whole"). Nor was the judge in error when she declined to comment on the affidavit of an attorney, submitted on behalf of the landlord, which contained an assertion that the fees requested by the landlord were "necessary, fair and reasonable." The landlord contends that, because its submission of that affidavit was uncontradicted by the tenant, the judge was bound to find the landlord's requested amount as the basic measure amount and that it was error for the judge to depart from it. The landlord is mistaken. See *Stowe* v. *Bologna*, 417 Mass. at 203. The landlord was "required to convince the [judge] that [its] request was reasonable under the standards already articulated." *Id.* at 204. See *Robbins* v. *Robbins*, 19 Mass. App. Ct. at 541 (burden of proof on party seeking fees). The judge was within her discretion when she ruled that the landlord's request for fees and costs was not reasonable. There was no error.

6. *Incorrect legal standard to determine reasonableness of attorney's fees and costs.* The landlord argues that "as a matter of public policy" a fee provision in a contract should be treated as an indemnity provision to deter frivolous litigation, relying on

*MIF Realty, L.P.* v. *Fineberg*, 989 F. Supp. 400, 402 (D. Mass 1998) (noting that contractual provision agreed to by parties, stating that all fees and costs would be paid by losing party, would "insure that a prevailing party would not have to expend any funds as a result of any dispute which arose under the contract"). The authority cited by the landlord is not dispositive on the issue of Massachusetts law concerning the award of attorney's fees, and we decline to adopt the principle proposed by the landlord. Unlike in *MIF Realty*, where the contract provided for "all costs, attorney's fees," *id.* at 401, in the present case the lease and the guaranty agreed to by the parties provided for "reasonable attorney's fees." The parties could have bargained for indemnification; they did not. Moreover, despite its discussion of indemnity as an analogy for the payment of attorney's fees, the court in *MIF Realty*, *id.* at 402, nonetheless engages in an analysis of whether the fees were "fair and reasonable" under *First Natl. Bank of Boston* v. *Brink*, 372 Mass. 257, 264 (1977), and *Cummings* v. *National Shawmut Bank*, 284 Mass. at 568-569. There was no error in the judge's application of the law.

*Judgment affirmed.*