Zobel, Hiller B., J.

Factual and Procedural Background

Plaintiffs, having obtained a judgment, now seek an award of attorneys fees ($326,004.25) and costs ($5,329.48), for a total of $331,333.73, 42 U.S.C. §1988; G.L.c. 12, §§11H & I. These figures explicitly do not include — nor do Plaintiffs request — fees for work entailed in preparing the fee/cost submission itself, Plaintiffs’ Revised Application for Attorneys Fees and Costs p. 5 n.5. The fee figure is, however, based on so-called current rates, i.e., applying the respective attorneys’ present billing rates, rather than the “historic” rates (the rates in effect at the particular times the attorneys rendered the services). Plaintiffs’ Revised Application for Attorneys Fees and Costs did not contain any data pertaining to historic rates. For reasons which will become apparent, the discrepancy is not important.
Before analyzing the application, a recapitulation of the factual stasis is appropriate, based on the court’s original Memorandum deciding the cross motions for summary judgment.
In late 2000, Marc Kenen (Executive Director of the Massachusetts Charter School Association) and Doris Shallcross (a trustee of the Pioneer Valley Performing Arts Charter High School) sought federal funds as administered by the Massachusetts Department of Education (“DOE”) to underwrite a conference of Western Massachusetts charter and other public school educators [on the one hand] and administrators of higher learning [on the other] with the goals of building collaborative relationships by sharing innovations and best practices among participating organizations; exploring the differences and commonalities between regular public schools and charter public schools; and providing opportunities for dialogue among the two types of public schools and higher education.
The grant proposal specified that private funds would pay any speaker’s fees. At that time, as the proposal stated, the organizers contemplated that Professor Howard Gardner of Harvard would deliver the “keynote” address. The proposal contained neither title nor topic of the anticipated address. Defendant Barker (the then-Associate Commissioner of Education for Charter Schools, and grant administrator) did not inquire about either matter. Ms. Barker knew generally that Professor Gardner studied the ways students effectively acquired knowledge and skill.
The conference planning committee wished the conference to address controversial issues, including the Massachusetts Comprehensive Assessment System (“MCAS”) and the matter of standardized tests.
When Professor Gardner declined the invitation to speak, the committee invited Plaintiff Kohn, who accepted. His fee was agreed to be $5,000 and his subject, “The Topics of Standards and Testing.” Mr. Kohn having written a book, The Case Against Standardized Testing: Raising the Scores, Ruining the Schools, the organizers asked, and Mr. Kohn agreed, that his speech would also bear that title.
Nothing pertaining to Mr. Kohn’s selection or the title of his address was brought to Ms. Barker’s attention.
The conference organizers prepared a brochure, promoting the conference by title (Convergence 2001: Public Schooling in Western Massachusetts: Sharing Best Practices and Promoting Dialogue) and including background material on Mr. Kohn, as well as the title of his address.
*453 Two months before the conference’s scheduled opening, Ms. Barker, after receiving and reading a copy of the brochure, told Ms. Shallcross that she objected to Mr. Kohn’s proposed topic. She immediately followed up with an e-mail (“the Barker email”):
Needless to say[,) it was stupid of Marc Kennan [sic] and the rest to use state funds in a way that a) violates their [federally-funded] grant and b) is diametrically opposed to the state’s and the board of ed’s legislative and policy agenda.
After some back-and-forth on the appropriateness of Mr. Kohn’s topic and the possible use of grant money to pay his fee, the planning committee rescinded Mr. Kohn’s invitation, although paying his full stipend (from private funds).
Ultimately, the current litigation commenced. Mr. Kohn claimed that the dis-invitation deprived him of opportunities for: (a) other speaking engagements; and (b) sales of his book, both at the conference and in connection with those other activities.
The other plaintiffs claimed that Defendants’ actions deprived them of the opportunity to hear Mr. Kohn during the conference.
In addition, Plaintiffs sought a declaration of their rights, G.L.c. 231A; Mass.R.Civ.P. 57.
On cross-motions for summary judgment, the court (1) ruled for Plaintiffs; (2) invited the parties to submit forms of judgment; and (3) invited Plaintiffs (or, more accurately, their counsel) to submit an application for attorneys fees.
The first fee application having been — in the court’s opinion — seriously deficient, Plaintiffs submitted a .substitute, which is the basis for the instant Memorandum and Order.
The court is today issuing a judgment disposing of all issues raised by the pleadings and the fee application.

Fee Application

Principles and Authorities

In determining a proper award, a judge need not hold an evidentiary hearing, Heller v. Silverbranch Construction Corp., 376 Mass. 621, 629-30 (1978); I have not done so.
At the same time, a judge must proceed with particular caution when requiring the party (albeit the losing party) who did not retain the attorney to pay for her or his services. Karedes v. Cities Service Oil Co., Suff.Super.Ct., Civ. No. 19731 (1982); Jones v. Caldwell, Midd.Super.Ct., Civ. No. 86-3001 (1987); see, generally, J. Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849 (1975).
In exercising its discretion, the court considers, where pertinent: the nature of the case and the issues presented; the time and labor required; the amount of damages involved; the result obtained; the experience, reputation, and ability of the winning attorney; other local attorneys’ usual charge for similar services; and the amounts of awards in similar cases. Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). Federal-court fee standards also apply in Massachusetts cases. Stratos v. Department of Public Welfare, 387 Mass. 312, 321 (1982); O’Hara v. Robbins, 13 Mass.App.Ct. 279, 288 (1982); Darmetko v. Boston Housing Authority, 378 Mass. 758, 764 (1979).
To ascertain the correct standards, the Court has particularly relied upon: Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 428-32 (2005); T&D Video, Inc. v. Revere, 66 Mass.App.Ct. 461, 475-83, review denied, 447 Mass. 1111 (2006); Siegel v. Berkshire Life Insurance Co., 64 Mass.App.Ct. 698, 704-06 (2005); WHTR Real Estate Ltd. Partnership v. Venture Distributing, Inc., 63 Mass.App.Ct. 229, 235 (2005); Raymond Leasing Corp. v. Callico Distributors, Inc., 62 Mass.App.Ct. 747, 751-52 (2005); Berman v. Linnane, 434 Mass. 301, 302-03 (2001); Society of Jesus v. Boston Landmarks Commission, 411 Mass. 754, 758-59 (1992); Margolies v. Hopkins, 401 Mass. 88, 93 (1987); Gaulin v. Commissioner of Public Welfare, 23 Mass.App.Ct. 744, 747 n. (1987); Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979); Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167-70 (3rd Cir. 1973) (“Lindy I"); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 108-21 (3rd Cir. 1976) (“Lindy II"); King v. Greenblatt, 560 F.2d 1024, 1026-28 (1st Cir. 1977), cert. denied, 438 U.S. 916 (1978); Souza v. Southworth, 564 F.2d 609, 612-14 (1st Cir. 1977); Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 559-61 (1st Cir. 1986); Hew Corp. v. Tandy Corp., 480 F.Sup. 758, 760-63 (D.Mass. 1979); Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1933); First National Bank of Boston v. Brink, 372 Mass. 257, 265-67 (1972); Hanner v. Classic Auto Body, Inc., 10 Mass.App.Ct. 121, 123 (1980); Draper v. Town Clerk of Greenfield, 384 Mass. 444, 456-57 (1981); Porter v. Treasurer, etc. of Worcester, 385 Mass. 335, 339-43 (1982); see also, Matter of Fordham, 423 Mass. 481, 485 (1996).

Analysis

1. The time and labor which counsel expended.

This is the starting point. Stratos v. Department of Public Welfare, supra, at 322; compare, First National Bank of Boston v. Brink, supra, at 267. On the other hand, it is not a “talisman.” King v. Greenblatt, supra, at 1027.
The time sheets which counsel has submitted satisfy the criteria of fullness and specificity which a fee awarding court must demand. King v. Greenblatt, supra, at 1027; compare, Calhoun v. Acme Cleveland Corp., supra at 560-61 (collecting cases).

*454
2.Novelty and difficulty of the legal issues.

The novelty of the litigation lies in two undeniable facts: (a) Mr. Kohn received eveiy penny of the fee which would have accrued to him had his presentation proceeded as originally arranged; and (b) the so-called right-to-listen plaintiffs suffered no tangible damage. Put in the vernacular, this was, at least on the surface, an instance of “No pain, no foul” thus requiring of counsel considerable ingenuity and jurisprudential excavation.

3.Legal skill required.

A dogged determination, and an understanding of the applicable constitutional, legal, and procedural principles were counsel’s primary necessary qualifications.

4.Preclusion of other employment.

It does not appear that any of Plaintiffs’ various counsel was forced to forego other retainers during the pendency of this action, either because of conflicting representation or because the case consumed inordinate amounts of time.

5.The attorney’s customary fee.

The proposed billing rates are appropriate for the several attorneys, given their respective experience, performing the claimed services. The test, of course, is the “market value” of similar services, not of work on similar cases. Stratos v. Department of Public Welfare, supra, at 323.

6.Was the fee fixed, as opposed to contingent?

Absent a written contingent fee agreement, Mass.R.Prof. C. 1.5(c), or evidence of any (improper) oral one, the Court infers that counsel were retained on a fixed-fee basis.

7.Time limitations.

Time was not a factor.

8. The stakes and the result.

Counsel seem to have achieved their clients’ goal completely, by establishing the rights for which they contended and by obtaining an order for reasonable attorneys fees and costs. The stakes, however, appear to have been something less than monumental, a matter central to the reasonableness of the fee claimed, and therefore the subject of further discussion below.

9. The attorneys’ experience, reputation and ability.

For present purposes, the court assumes that counsel (particularly Attorney Sarah R. Wunsch) possess, besides considerable experience in First Amendment matters, great ability and substantial professional reputations.

10. Is this case “undesirable”?

Nothing about this particular litigation would tend to cause clients to shun any of the lawyers on account of association with this litigation.

11.The nature and length of the professional relationship with the client

None of the attorneys nor the ACLU or Wolf, Greenfield & Sacks, P.C. appears to have had anything but a one-time relation with any plaintiff.

12.Awards in similar cases.

The record does not indicate any basis for comparison-fee-setting.

Calculating a Reasonable Fee

The “lodestar” theory requires the Court to calculate the attorney’s hours, multiply them by the applicable hourly rate, and obtain therefrom a figure to which the Court makes appropriate adjustments, either up or down. In Massachusetts, although this number “should govern,” absent “special reasons” for departing from it, Stratos v. Department of Public Welfare, supra, at 322, it is not mandatory, Gaulin v. Commissioner of Public Welfare, supra, at 747 n. Counsel have submitted detailed statements of hours worked and hourly rates which for present purposes that court accepts as accurate and appropriate, both as to time and monetary amount ($326,004.25).
As to expenses, counsel have submitted an appropriately detailed itemization, totaling $5,329.48.
The court’s difficulty can be briefly expressed: Even allowing for the significance of the contested principle (the right to be heard and the right to hear), the amount sought is simply too high, given the true litigational stakes.
This case calls to mind the scene in Hamlet where the Norwegian army under Fortinbras crosses Danish territory en route to Poland, “to gain a little patch of ground/That hath in it no profit but the name,” a battle which will kill “twenty thousand men,” who “fight for a plot” which is not large enough to bury them.
Having examined the parties’ respective submissions, I find that the lawyers did indeed “work” the hours for which they now seek payment. I find further that the fees attributed to the time spent are qua hourly charges reasonable. I find that the various costs were reasonably incurred, and that the amounts attributed to them are reasonable.
Nonetheless, I believe that under all the circumstances, the maximum reasonable charge for the legal services rendered would be $ 150,000. In reaching this conclusion, I have in mind the common (albeit unpleasant) necessity that at one time or another afflicts every practitioner, viz., the need to “write off’ or “eat” a portion — sometimes a large portion — of the “billable hours” and their attendant fees. In reaching this conclusion, I do not in any way accuse any lawyer of “milking” the case, that is, of performing needless work solely to fatten the eventual bill. Nor do I accuse anyone of “double billing,” that is, two attorneys’ charging two cases for a single piece of work.
I believe the proper fee measure is the historic hourly rate — the rate applicable to the work at the time counsel *455 performed it. Absent any information as to what the figure thus derived might be, that figure obviously cannot affect my decision today. I have no reason, however, to believe that the “historic” figure would be less than the $150,000 I have determined to be appropriate here.
Finally, I have fully considered the concept of “private attorney general.” As counsel have pointed out, Plaintiffs’ Revised Application for Attorneys Fees and Costs p. 15, a plaintiff who acts to vindicate an important public interest and thus to deter future violations is entitled to compensation for the lawyering involved. Moreover, I am aware that the size of a plaintiffs monetary recovery is irrelevant to the award of fees and costs.
Nonetheless, I am firmly persuaded that the reasonable fee which the statute permits is no more than $150,000 [plus the reasonable costs of $5,329.48), for a total award of $155,329.48.

Other Matters

Plaintiff Alfie Kohn is entitled to a declaration that by their conduct in causing the revocation Defendants jointly and severally deprived him of the constitutional right to be heard and to communicate information.
Plaintiffs Leslie B. Edinson, Jan Shotwell, and David Sprague axe entitled to a declaration that Defendants jointly and severally deprived them of their constitutional right to hear and to receive information.
None of the Plaintiffs having suffered any financial injury, none is entitled to damages here.
Plaintiffs seek an injunction that Defendants not threaten any person or entity with adverse consequences, including denial of grant monies or withdrawal of grant monies previously allocated to that person or entity, based on (i) a viewpoint expressed, or expected to be expressed, by such person or entity; or (ii) a viewpoint expressed, or expected to be expressed, during, or in connection with, an activity organized by such person or entity.
The form of injunction Plaintiffs propose is excessively broad, and so vague as to be unenforceable. For example, they seek to enjoin Defendants from denying grant monies to any person based on the person’s viewpoint expressed or expected to be expressed during or in connection with an activity organized by the person. This conflicts squarely with the right of a conference organizer, for example, to invite speakers with a particular “viewpoint” (whatever that word means) to speak on a given topic, so long as it comports with the theme of the conference. A grant-money source is, to some extent, permitted to condition its support on pure subject-matter limitation, seeking to preserve the conference’s underlying scope, but not on viewpoint discrimination, directed at speech which, as to subject, conforms with the stated limits, Rosenberger v. Rector and Visitors of University of Virginia, 515 U.S. 819, 829-30 (1995).
Here, anyone subject to the injunction Plaintiffs have proposed would have to ascertain the viewpoint of an individual (by a means unspecified) and then run the risk of having to defend against a claim that rejection of the individual rested (apparently whether in whole or in part) on disagreement with the viewpoint. As drafted, the injunction would, for example, cover a situation in which Defendants (or either of them) approved a grant of public money for a conference on the place of contact sports in secondary education, only to find that the grant recipients had engaged a speaker whose topic was “Chess for Pre-Schoolers.”
Moreover, as written, clause (ii) of the proposed injunction blurs the distinction between the conference itself and “activities]” organized by the conference planners. Indeed, the proscription covers a “viewpoint expressed or expected to be expressed . . . in connection with" any such activity.
An injunction must be clear to the people required to obey it, as well as to the judge who must enforce it. It must inform the parties of their rights and obligations; it must contain enough to permit the court fairly to determine the existence of a contempt. A detailed order is especially useful when correcting a violation of public rights, Borne v. Haverhill Golf & Country Club, Inc., 58 Mass.App.Ct. 306, 323-24, review denied, 440 Mass. 1101 (2003).
Sometimes, however, less is better — or at least clearer. Accordingly, the most appropriate injunction will indicate that if a grant proposal for a conference or similar project clearly discloses the speaker and the subject of the speech, defendants may not withhold grant monies if the proposed subject is arguably related to the subject of the conference.

ORDER

Accordingly, it is Ordered, that Judgment enter forthwith as follows:
Defendants jointly and severally are Declared and Adjudged to have deprived Plaintiffs Leslie B. Edin-son, Jan Shotwell, and David Sprague of their respective constitutional rights to hear and to receive information.
Defendants jointly and severally are Declared and Adjudged to have deprived Plaintiff Alfie Kohn of his constitutional right to be heard and to communicate information.
Defendants owe Plaintiffs, on account of counsel fees, $150,000 (One Hundred Fifty Thousand Dollars), plus expenses in the amount of $5,329.48 (Fifty-three Hundred Twenty-nine Dollars Forty-eight Cents). Defendants, their officers, agents, servants, employees, and attorneys are permanently enjoined from withholding or attempting to withhold or deny any financial award or grant monies for a conference or similar project, unless: (1) the grant proposal clearly discloses the speaker and the topic of the speech; and (2) the proposed topic is clearly not related to the subject of the conference or similar project.