Coven, J.
The dispositive issue presented by the defendant’s appeal in this summary process case is whether the action was barred under the doctrine of claim splitting.
In 1972, defendant Barbara Waterman moved to Harwell Homes Cooperative, Inc. (“Harwell”), a housing development managed by plaintiff Meredith Management Corporation (“Meredith”). Under Harwell’s cooperative housing structure, residents enter into an Occupancy Agreement and are considered not only residents, but also shareholders in the corporation that owns the development. According to the Occupancy Agreement, residents do not pay “rent.” Rather, residents are assessed monthly “carrying charges” determined by a formula that, in the aggregate, passes on to all residents, but not necessarily in equal shares, the expenses of running the Harwell development.
Meredith claims that pursuant to Article 17 of the Occupancy Agreement, Harwell was authorized to impose on any resident, who defaulted in the performance of an obligation, the cost of legal services incurred in the enforcement of the obligation. The second paragraph of Article 17, titled LATE CHARGES AND OTHER COSTS IN CASE OF DEFAULT, states, in ungrammatical form:
K a Member defaults in making a payment of Monthly Carrying Charges or in the performance or observance of any provision of this Agreement, and the Corporation has obtained the services of any attorney with respect to the defaults involved, [sic] including reasonable attorney’s fees, notwithstanding the fact that a suit has not yet been instituted. In case a suit is instituted, the Member shall also pay the costs of the suit, in addition to other aforesaid costs and fees.[2]
Harwell’s property manager, Christine Bogdahn (“Bogdahn”), indicated that the fees were considered part of the resident’s carrying charges, but were not actually *9 assessed against a resident “until there [was] a finding.”
Waterman served as the president of the Harwell board of directors (“board”) in the fall of 2005. During this period, the board adopted a policy for the application of moneys it received from residents to the carrying charges assessed against the resident. The adopted policy required that all payments received from a resident would be applied to the oldest balance owed by that resident. Under the policy, the oldest balance included both carrying charges and other assessments. Assessments included any attorney’s fees incurred in the enforcement of an obligation against the resident.
In 2007, Meredith commenced an eviction action against Waterman for violations of the Occupancy Agreement based on drug-related criminal activity by a member of her household. In connection with that 2007 summary process proceeding, Meredith incurred legal expenses in the amount of $6,118.75. After trial, judgment was entered in favor of Meredith on November 2, 2007, but the court did not award possession of the unit, any damages, or any fees and costs to Meredith. Rather, a permanent injunction was issued against Waterman, pursuant to G.L.c. 139, §19, requiring her to refrain from allowing the family member responsible for the drug activity to enter the premises or store belongings at the property. The injunction also required Waterman to relinquish her seat as a member of the Harwell board of directors, and prohibited her from having or allowing controlled substances to be present on the premises. Meredith’s 2007 complaint had not sought legal fees and, as noted, the summary process judgment did not address attorney’s fees associated with the proceeding. An amended judgment, clarifying certain obligations placed on Waterman, was entered on February 11, 2008, nunc pro tunc to the original November 2, 2007 judgment. Again, no damages or legal fees were included in the amended judgment because none had been sought by Meredith.
Following the amended judgment, Meredith assessed against Waterman the legal fees it had incurred, but never claimed, in the 2007 action, and began applying all moneys received from Waterman to those legal fees. Waterman believed, however, that the moneys she paid were applied to her monthly “carrying charges” for her unit. Meredith’s application of Waterman’s moneys to Harwell’s legal fees placed Waterman in default for failing to pay her base monthly “carrying charges.” Meredith, as Harwell’s agent, then commenced this 2009 summary process action against Waterman for what it claimed was her failure to pay her monthly carrying charges. At trial, Waterman argued that Harwell was precluded from collecting the legal fees because legal fees were not sought, assessed, or awarded as part of the judgment entered in the 2007 action.
At trial, property manager Bogdahn testified that the first discussions about legal fees connected with the 2007 action occurred in August or September of 2007, when the parties were considering a possible “plea or arrangement” to dispose of the 2007 eviction proceeding. According to Bogdahn, Meredith wanted to “resolve the whole matter.” Waterman, however, elected to proceed to trial. Meredith first billed Waterman for the fees associated with the 2007 summary process action on January 29 or 30 of 2008. The amount billed was $4,035.75. Meredith notified Waterman that in conformity with the 2005 policy adopted by the board, all payments received from her would be applied to her oldest balance, i.e., to the 2007 attorney’s fees Meredith had imposed on her. Waterman requested that Meredith verify the amount. After conducting an audit, Meredith charged an additional $2,083.00 in legal fees to Waterman.
*10 In July of 2008, Meredith began applying all moneys received from Waterman to the legal fees it had assessed against her. That process was suspended when the issue was brought before the board, of which Waterman was a member. The board instructed Waterman to settle the issue or to face removal from the board. Meredith’s collection of the fees was also suspended when Waterman filed a discrimination complaint with the Cambridge Fair Housing Commission regarding the imposition of the attorney’s fees. In the fall of 2008, the board reconvened. Having received a favorable ruling on Waterman’s discrimination claim and with the legal fees still unpaid, the board removed Waterman as a director.
Waterman made full monthly payments in an amount equal to the base “carrying charges” for her unit. Meredith’s application of those payments to the attorney’s fees it had assessed against Waterman instead of to her regular carrying charges caused Waterman to be in default of her monthly “carrying charges” obligation. Meredith commenced this 2009 summary process action against Waterman based on that default. Despite Meredith’s filing of this suit as a claim for unpaid rent, however, it is clear that the action is predicated on Waterman’s failure to pay the assessed attorney’s fees associated with the prior summary process action and assessed by Meredith after the conclusion of that 2007 action.
“The prohibition against claim splitting... is sometimes called ‘claim preclusion.’” Mongeau v. Boutelle, 10 Mass. App. Ct. 246, 251 (1980). ‘Whether expressed as claim preclusion or as a rule against claim splitting, the doctrine presupposes that a claimant has had an opportunity to assert his claims against a given defendant, and either has failed to assert those claims or has asserted the claims and had them adjudicated adversely.” Day v. Kerkorian, 61 Mass. App. Ct. 804, 811 (2004). As stated by the Appeals Court in Boyd v. Jamaica Plain Co-op. Bank, 7 Mass. App. Ct. 153 (1979):
[T]he principle prohibiting claim splitting ... states that the entry of a ‘valid and final judgment extinguishes... all rights of a plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.’ Restatement (Second) of Judgments §61(1) (Tent. Draft No. 5, 1978). [3] This principle will be applied to extinguish a claim even though the plaintiff is prepared in the second action to present evidence, grounds, or theories of the case not presented in the first action or to seek remedies or forms of relief not demanded in the first action. This policy promotes judicial economy and has been applied by our courts to bar successive actions.
Id. at 163.
The parties do not dispute that the Occupancy Agreement permitted Meredith to recoup “reasonable” attorney’s fees incurred in the enforcement of any obligation against a resident; that Meredith filed the 2007 summary process action for Waterman’s breach of the Occupancy Agreement, and retained legal counsel in bringing that suit; that although entitled to do so under Article 17 of the Occupancy Agreement, Meredith did not seek recovery of reasonable attorney’s fees in the 2007 action; that Meredith attempted subsequent to that action to obtain reimbursement *11 from Waterman for those legal expenses[4]; and that Meredith ultimately brought this second eviction action to recover the unpaid attorney’s fees connected with, but never sought in, the first action. This case is, thus, barred by the rule against claim splitting. Meredith’s failure to seek attorney’s fees in its 2007 action extinguished its claim and precludes this second suit to recover those fees. Boyd, supra.
Moreover, had Meredith properly included a claim for attorney’s fees in its 2007 suit, the trial court would have determined the amount constituting “reasonable” attorney’s fees to be awarded to Meredith. Generally, a litigant must bear his own attorney’s fees unless such fees are allowed pursuant to statute or contract. Police Comm’r of Boston v. Gows, 429 Mass. 14, 17 (1999); Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 95 (1997). Here, the Occupancy Agreement provided for the recovery of only “reasonable” attorney’s fees. “The parties could have bargained for indemnification; they did not.” WHTR Real Estate Ltd. Partnership v. Venture Distrib., Inc., 63 Mass. App. Ct. 229, 238 (2005). Given the parties’ specific contractual agreement, Meredith was not entitled to reimbursement of its full legal costs, but could have recovered only those attorney’s fees that were fair and reasonable. See Trustees of Tufts College v. Ramsdell, 28 Mass. App. Ct. 584, 585 (1990). “The basic measure of reasonable attorney’s fees is a ‘fair market rate for the time reasonably spent preparing and litigating a case.’” Stowe v. Bologna, 417 Mass. 199, 203 (1994), quoting Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993). Even if uncontested, the reasonableness of attorney’s fees remains a question for the trial court. WHTR Real Estate Ltd. Partnership, supra at 237 (even if undisputed, burden remained on landlord to prove reasonableness of fee request). That necessary judicial determination is not properly made when the issue is raised not in the proceeding in which it arose, but in a separate, subsequent action. It is the judge who presides over the case who is in the best position to make the required attorney’s fees determination.[5]
Judgment for plaintiff Meredith Management Corp. on its complaint is vacated, and judgment is to be entered for defendant Barbara Waterman on the plaintiff’s complaint.
So ordered.

 The first portion of paragraph 2 of Article 17, ending with a period, clearly omits necessary language between the words “involved,” and “including.” We have quoted the provision verbatim from the Occupancy Agreement included in the appendix.

 See RESTATEMENT (SECOND) OF JUDGMENTS §24 (1980).

 There is a serious question whether Meredith was entitled to any attorney’s fees. Property manager Bogdahn’s statement that the fees would not be assessed “until there [was] a finding” can be interpreted to mean that attorney’s fees would be assessed only if Meredith were successful in its legal action. Meredith sought to evict Waterman in the 2007 summary process proceedings. Waterman was not, however, evicted; an injunction was instead issued. The parties have not briefed this issue, and we need not consider it

 In determining reasonable attorney’s fees, a court will consider the “ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by the controversy, and the results secured.” Northern Assocs., Inc. v. Kiley, 57 Mass. App. Ct. 874, 882 n.17 (2003), quoting Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1933).